## DAWKINS, Appellant, v. GRIFFIN.

### Division One, March 30, 1906.

EJECTMENT: Agreement to Make Deed: Proof: Judgment: Value of Improvements: Rents. To the plaintiff's suit in ejectment the defendant set up a plea in the nature of an equitable counterclaim for the specific performance of a parol agreement on plaintiff's part to convey the premises sued for to defendant in consideration that he would make certain improvements thereon and would clear up certain other lands belonging to plaintiff. *Held*, that, to defeat plaintiff's ejectment, it devolved on defendant to establish the contract to convey in clear, definite and unequivocal terms, and the evidence failing to establish any such contract, as the court found, the court had no authority to enter judgment for plaintiff upon condition that he pay the defendant within a specified time the ascertained value of the improvements made by him, or in the event plaintiff failed to do that, the defendant, within a designated time thereafter, might pay to the clerk the value of the property less defendant's improvements, and have the title. The statute (sec. 3072, R. S. 1899) designates the judgment to be rendered in such case, which is that the plaintiff is entitled to possession and the value of the rents less the value of the improvements made by defendant in good faith, and if the value of the improvements exceeds the rents, then plaintiff can have judgment for possession and for rents only after judgment.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED *(with directions).*

*O. F. Smith* for appellant.

The burden of establishing by clear and satisfactory evidence a contract which it is sought to have specifically enforced, rests upon the person who sets it up, and unless he meets such requirement, a court of equity will not decree specific performance. Nor will such contract be enforced where it is merely executory, and without consideration to support it. Taylor v. Von-Schraeder, 107 Mo. 206; Strange v. Crowley, 91 Mo. 287; Taylor v. Williams, 45 Mo. 80; Veth v. Gierth, 92 Mo. 97; Hubbard v. Hubbard, 140 Mo. 303; Rogers v. Wolf, 104 Mo. 9. The record discloses such contradictions and conflicts in the evidence that the lower court states in its findings that "the exact nature of the agreement or understanding, by which defendant went into possession of the land in controversy, the court is unable to determine specifically." In such case the judgment should have been for the plaintiff. Coleson v. Thompson, 2 Wheat. 336; Taylor v. Williams, 45 Mo. 80.

*J. A. Collet* for respondent.

Respondent's taking possession of the land and making improvements upon it was sufficient part performance to take the contract out of the Statute of Frauds, and was sufficient consideration to support respondent's claim for equitable relief. Bispham's Principles of Equity, secs. 384 and 385; Pomeroy's Equity Jurisprudence, sec. 1409; West v. Bundy, 78 Mo. 407; Anderson v. Scott, 94 Mo. 637; Hall v. Harris, 145 Mo. 614; Chenoweth v. Express Co., 93 Mo. App. 185. The

court had full power to disregard defendant's prayer for relief and render whatever judgment would be equitable to both parties and not inconsistent with the issues made by the pleadings, and therefore had full power to disregard defendant's prayer for a decree vesting title in him, and render a judgment which would give justice to both parties under issues made by the pleadings and the facts proven. Pomeroy's Equity Jurisprudence, sec. 242; Bispham's Principles of Equity, sec. 37; Henderson v. Dickey, 50 Mo. 161; Woodworth v. Tanner, 94 Mo. 124; Ames v. Gilmore, 59 Mo. 537; Clem v. Ins. Co., 29 Mo. App. 666; 11 Am. and Eng. Ency. Law (2 Ed.), 201. Where there is a conflict in the evidence, and there is substantial evidence to support the judgment of the trial court, this court will not interfere with that judgment, but will defer to the finding of the trial court. Rea v. Ferguson, 72 Mo. 225; Anderson v. Griffith, 86 Mo. 549; Warder-Bushnell-Glessner Co. v. Allen, 63 Mo. App. 456.

BRACE, P. J.—This is an action in ejectment to recover possession of a small tract of land in Chariton county, described in the petition by metes and bounds, and containing ninety-seven one-hundredths of an acre.

The petition is in common form. The answer a general denial, and a plea as follows:

"And for a further answer to plaintiff's petition defendant says: That in the early part of the year 1898 he was living with his family on a small farm of forty acres of land lying in the neighborhood of the land in controversy and near where plaintiff then lived and now lives, which said forty-acre farm was heavily mortgaged, defendant having a small equity in said farm; that plaintiff induced defendant to sell his said equity in said farm and move therefrom, upon the promises and representations made by plaintiff to defendant that if he, Griffin, would sell said farm and move upon and improve it for his home, the land de-

scribed in plaintiff's petition, which land was then a small unimproved parcel of land lying between the public road and the Chariton river, and fit only for the building thereon of a small residence property, and worth not more than ten dollars, if in fact it was worth that much, and would lease, clear and cultivate certain land belonging to plaintiff which he desired to have cultivated, that he, plaintiff, would convey to defendant said real estate in plaintiff's petition described. That defendant acting upon the advice and recommendation of plaintiff, and representations of plaintiff so made as aforesaid, sold his said farm and at a large expense in money and labor, made lasting and valuable improvements upon said real estate, in plaintiff's petition described, and moved thereon, and has ever since occupied said property as his residence; that he leased, cleaned, improved and cultivated other lands of plaintiff as per their agreement in that regard until the year 1901, when plaintiff refused to permit defendant to longer cultivate said land and demanded that defendant remove from the property he had improved for his residence as aforesaid, refused to convey said real estate to defendant as he obligated himself to do as above set out. Wherefore, by reason of the premises defendant prays the court for a decree divesting plaintiff of the title to said real estate in plaintiff's petition described and vesting the title thereto in defendant and for all proper relief."

The reply was a general denial. The case was tried before the court without a jury. On the trial it was admitted that the legal title was in the plaintiff, and that the defendant was in possession of the premises.

It appears from the evidence that the defendant went into possession of the premises about the first of March, 1898, and ever since has remained in possession of the same; that at the time he went into possession there was a small box house on the premises; that plain-

tiff was a carpenter; that thereafter he erected an addition to the house of two rooms and also a barn or stable; that the value of the premises at the time defendant took possession was about $50, and the value of the improvements afterwards put upon the lot was about $200; that the plaintiff furnished the hard-wood lumber for the improvements, and the defendant furnished the other materials and did the work. The relative values contributed by each to the whole value of the improvements does not appear. The evidence tended to prove that the value of the rents and profits of the premises was about four dollars per month after the improvements were made, and about two dollars per month before, and that plaintiff paid all the taxes thereon.

The only evidence in support of the contract set up in the defendant's plea was that of himself. He testified as follows:

"Q. Go on and state the agreement you had with Mr. Dawkins and what was the consideration offered to you—the promises made? A. He made a proposal to me to come down there and build on that little three-cornered piece of land and he would give it to me. First said he would give it to me and I told him I didn't think I was able to build a house. I would go and see if I could get the shingles and nails. I went to see Mr. Holcomb and got it. After I got on the wagon I asked him how he wanted me to make it good—he says: 'It is all right—Mr. Dawkins said he would fix it.' Mr. Dawkins gave his note and said I could have this piece of ground and I goes ahead and builds a house the first winter. I moved there the first day of March, 1897. I think it was six years ago next March. I have been there six years, I think, if I am not mistaken. The first winter following I was pretty hard run and couldn't build a barn and I rented a little stable, and along in the winter Mr. Dawkins gave me a raking for not building a barn. I went ahead and built the barn and I told him

—I says: 'I wish you would give me a bond for a deed,' and he said, 'Go ahead.' And I told him as soon as I paid them notes off he could give me a bond for a deed, and he said, 'Yes, go ahead,' and I finished paying the notes off to-day and he gave me notice to-morrow to leave, and I paid for the material and did the work.

"Q. Mr. Griffin, I will get you to state to the court whether or not you and Mr. Dawkins had an understanding, and whether it was in pursuance of that understanding that you made all these improvements that you were to get a deed for it? A. I took his word the same as I would my own, or I wouldn't have done it."

He further testified that no one was present when the conversations were had, except the plaintiff and himself.

The plaintiff, who testified in his own behalf, flatly contradicted this evidence and testified that what he did say to defendant was that if he would "clear up that piece of ground between my house and Hensley's I'll let you have that house down there across the road to live in. . . . I don't think there was any specified time. I allowed for him to have the land and the house for three years, but I don't think I ever named it. He may have done it but my understanding always has been that there wasn't any specified time. . . . He would have been there to-day if he had cleared up the ground he contracted to do." (Evidently meaning that he would not have notified him to quit.) That there was never anything said at any time about a deed. That the defendant did not clear up the piece of ground referred to, that he agreed that defendant might add one room to the house and he would furnish the hard lumber, but told him not to build a barn.

Other witnesses in behalf of plaintiff testified as follows:

James Price:

"Q. State what Mr. Griffin said were the terms of his agreement with Mr. Dawkins? A. I heard them

both say that Griffin was to clear up some ground north of Mr. Dawkins' house and he was to have the ground three years for the clearing of it, and he was to move a house that was standing there and build more to it and to have the use of the house free.''

A. J. Shoemaker:

''Q. State what, if anything, you heard Mr. Griffin say about the terms of his lease with Mr. Dawkins? A. Some one asked him about the clearing up of this ground that lays up next to Mr. Hensley's, and he just answered by asking what it was worth to clean it up, and he said he had that, and he was going to clean it up.''

William Oldham:

''Q. . Did you have any talk with Mr. Griffin about this lawsuit he is having with Mr. Dawkins about that property? A. Once.

''Q. When was that? A. I couldn't tell you the exact time.

''Q. About when? A. It was directly after the suit commenced, a short time after I heard of it, I think.

''Q. State if you remember what Mr. Griffin said about the property? A. Joe says to me: 'I don't intend to give possession and lose what I put there. If he will pay me for what I put there I will give him possession, otherwise I won't.' I think that is the truth as near as I can tell it.''

The court rendered judgment as follows:

''It is considered and adjudged by the court here that the plaintiff have and recover of and from the defendant the possession of the premises sued for in his petition, together with all improvements erected thereon, upon the following express condition, viz.: That within ninety days from the adjournment of this court, or the final determination of this cause in any appellate court to which the same may be taken, the plaintiff pay over to the clerk of this court the sum of two hundred dollars, then thirty days after such payment, a writ of

execution and restitution to issue, requiring the sheriff to put the defendant out of possession of said premises; provided, further, that if the plaintiff shall fail to pay over the sum of money required by this decree in payment for the improvements made by the defendant, within the time herein limited by this judgment, then the defendant shall, within thirty days after plaintiff's time for payment shall have expired, pay over to the clerk of this court, for the use of plaintiff, the sum of fifty dollars; then, and in that event, the title to said land shall be vested in the defendant, without any further act or thing to be done by the plaintiff in regard thereto.

"It is further provided by the court here that should the plaintiff pay over to the clerk of this court the sum of money herein provided to be paid, for the use of the defendant, within the time by this decree indicated, then, and in that event, the defendant shall enter satisfaction of this judgment, or execute a quit-claim deed to the plaintiff for the land in question.

"It is further ordered and adjudged that each party pay one-half of the costs of this suit, and that execution issue therefor in the event of non-payment of same."

From this judgment the plaintiff appeals.

In its finding of facts the court says: "The exact nature of the agreement or understanding by which defendant went into possession of the land in controversy the court is unable to determine specifically," and in effect found the issues for plaintiff upon defendant's plea in the nature of an equitable counterclaim for specific performance of the parol contract for conveyance of the premises therein set up against him. And the court could not upon the evidence have well done otherwise. In order to sustain his claim it devolved upon him to show a contract with the plaintiff in clear, definite and unequivocal terms by which plaintiff agreed to give or convey the premises to him "by evidence so cogent and

satisfactory as to leave no room for reasonable doubt, and in like manner and by like evidence to satisfy the mind and conscience of the chancellor that the improvements made by him on the place were the result of such agreement, made in pursuance and on account thereof, and but for it they would not have been made, and that a refusal to enforce the contract would operate as a fraud upon the defendant. 'There must be no equivocation or doubt in the case.' " [Goodin v. Goodin, 172 Mo. 48, and cases cited.] The failure to make such proof in support of the defendant's claim is so manifest upon the face of the evidence that analysis of or comment upon it is unnecessary. The court having found the issues upon the plaintiff's petition in his favor and the issues upon the defendant's counterclaim also in his favor, the only question is, what then remained to be done? Manifestly nothing except what the statute provides, i. e., to find "the monthly value of the rents and profits," and to render judgment in favor of the plaintiff for the recovery of the premises, damages and accruing rents and profits. [R. S. 1899, secs. 3067 and 3068.] This the court did not do, but instead rendered the judgment hereinbefore set out. This judgment is outside the issues of the case and wholly without warrant of law. If the defendant is entitled to compensation for improvements put upon the property, a proceeding is provided by statute whereby he may obtain it. [R. S. 1899, sec. 3072, et seq.] But that remedy is beyond and entirely outside the issues of this case and could not be afforded by a proper judgment rendered on those issues, as was attempted to be done in this case. Nevertheless, in Dothage v. Stuart, 35 Mo. l. c. 254, it is said: "By the common law the owner recovers his land in ejectment, without being subjected to the condition of paying for improvements which may have been made upon it by any intruder or occupant without title. This rule of the common law, however, has become so far re-

laxed as to allow a defendant in the action for mesne profits, and also a defendant in the action of ejectment where in that action the rents and profits are recoverable, to set off the value of permanent improvements on the land made by him in good faith during his occupancy to the extent of the rents and profits claimed. [Sedgwick on Dam., 126.] But in all cases where the value of the improvements exceeded the rents and profits, the law as thus relaxed failed to furnish a full measure of justice. To cure this defect, the statutory provisions quoted were adopted.''

And in Fenwick v. Gill, 38 Mo. 510, it was held that, ''In an action of ejectment the value of the improvements upon the land made by the defendant in good faith may be deducted from the rents and profits.''

We see no reason why this principle, more recently recognized in Tice v. Fleming, 173 Mo. 49, should not be applied in this case; and applying it, the judgment of the circuit court will be reversed and the cause remanded with directions to the circuit court to ascertain and determine the value of the rents and profits, and the value of the improvements put upon the premises by the defendant, and render judgment for the plaintiff for the recovery of the possession of the premises, and only for so much for monthly rents and profits as the amount of their value may exceed the amount of the value of the improvements; and, if the value of the latter exceed that of the former, the plaintiff to have judgment only for the recovery of the possession of the premises and for rents and profits accruing after the judgment.

All concur.