# PETER H. MONTGOMERY v. D. W. GAHAGAN, Appellant.

**Division One, November 30, 1912.**

1. **EJECTMENT: Judgment: Default.** It was error for the trial court, in ejectment, to enter default and proceed to final judgment against the defendant, when, his general denial still standing as a pleading in the case, he refused to plead further after a demurrer to his plea in confession and avoidance was sustained.

2. ———: **Appeal: Record.** Where plaintiff's motion to strike out a plea of confession and avoidance in defendant's answer was overruled, but after change of venue his demurrer to the same plea was sustained, defendant's contention that the sufficiency of his plea was *res adjudicata* after the overruling of the motion to strike out, cannot be considered on appeal, unless, by moving to strike out the demurrer or by some other appropriate course upon the record, he apprised the trial court of his intention and gave it an opportunity to review its decision.

3. ———: **Improvements: Lien.** Where a purchaser of land is sued in ejectment by the vendor, because of failure to pay the stipulated installments of the purchase price, he cannot have the value of improvements, made under a collateral contract, charged as a lien on the land in the same action, but must set them off against the damages for rents and profits claimed by the vendor.

4. ———: ———: **Damages: Rents and Profits.** Where the vendor of land elected to forfeit the contract of sale for nonpayment of installments of the purchase price, and to keep, under a provision of the contract, the payments already made in full satisfaction of damages for the breach, and sued the vendee in ejectment, the defendant had the right to offset the value of his improvements on the land against the plaintiff's claim for damages on account of mesne profits and a judgment which fails to allow such offset must be reversed, upon the facts of this case, even though the damages allowed were merely nominal.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

Montgomery v. Gahagan.

*A. D. Bennett* and *A. J. Clarity* for appellant.

(1) The circuit court of Greene county erred in passing upon the demurrer filed in that court so long as the order of the Newton Circuit Court, overruling the motion to strike out parts of the answer, remained unreversed, inasmuch as the points raised in the demurrer were identical with those raised by the motion to strike out, and had passed in *rem adjudicatam.* Baisley v. Baisley, 113 Mo. 545; Kisinger v. Council Bluffs, 73 Iowa, 171; Rogers v. Holing, 46 Wis. 361; Sanderson v. Dailey, 83 N. C. 67; McDowell v. Railroad, 14 S. W. 338; Wells on Res Adjudicata & Stare Decisis (1878 Ed.), Secs. 2 and 6; Hermann on Estoppel and Res Judicata, Sec. 247. (2) An exception to ruling on a demurrer neither helps nor hurts as a demurrer will keep without an exception. Spears v. Bond, 79 Mo. 467; Hannah v. Hannah, 109 Mo. 236; Thorp v. Miller, 137 Mo. 238; McKenzie v. Donnell, 151 Mo. 431; Newton v. Newton, 162 Mo. 173; County v. Morgan, 163 Mo. 661; Mallinckrodt v. Memnich, 169 Mo. 388; Dysart v. Crow, 170 Mo. 275; Meissner v. Equip. Co., 211 Mo. 112; State v. Christopher, 212 Mo. 244; Houtz v. Hellman, 228 Mo. 655. (3) The circuit court of Greene county erred in sustaining the demurrer of plaintiff to the answer of the defendant, as the answer was properly drawn and the facts were properly pleaded. Springer v. Kleinsorge, 83 Mo. 152; Cohn v. Lehman, 93 Mo. 574; Ledbetter v. Ledbetter, 88 Mo. 60; Crowder v. Searcy, 103 Mo. 117; R. S. 1909, Secs. 1806, 1807, 2050; St. Louis v. Lumber Co., 98 Mo. 613; Swope v. Weller, 119 Mo. 556; Sampson v. Mitchell, 125 Mo. 217; Claybrush v. McLaughlin, 106 Mo. 521; Stump v. Hornbeck, 94 Mo. 26.

*Barton J. Morrow* for respondent.

(1) Appellant having failed to file a bill of exceptions, the action of the Newton Circuit Court in

granting a change of venue, as well as the matters set up in a motion to strike out, are not before this court. (2) The vendee in an executory contract, who fails to perform his part of the contract, cannot recover for improvements placed upon the land; such recovery can only be had for the vendor's fault; the vendee cannot set up his own default and failure as a reason for equity granting relief. Sedgwick & Worth, Trial of Title, 708; 16 Ency. Law, p. 97; Railroad v. Crawford, 68 Mo. 80; Luckett v. Williams, 37 Mo. 388; Bedford v. Burton, 106 U. S. 388; Toplift v. Shadwell, 74 Pac. 1120; Keister v. Cubine, 45 S. E. 285; Rose v. Perkins, 98 Mo. 258; Rainer v. Huddleston, 4 Heisk. 223; Long v. Finger, 74 N. E. 502; Young v. Pate, 3 J. J. Marsh, 101; Farham v. Davis, 32 N. H. 302. (3) Appellant having made default in his payments, respondent was entitled to possession of the property and could recover in ejectment. Gibbs v. Sullens, 48 Mo. 237; Fulkerson v. Brownlee, 69 Mo. 371; Rose v. Perkins, 98 Mo. 258; DeBarnardi v. McElroy, 110 Mo. 657. (4) Even if appellant was entitled to recover for improvements, such recovery would only go to release the amount of damages found by the court to be one cent. Dawkins v. Griffin, 195 Mo. 430.

BROWN, C.—This is an action in ejectment, instituted January 15, 1907, in the Newton County Circuit Court, to recover a piece of ground in the city of Seneca in that county, on which a flour mill was situated.

The defendant filed an answer, in which he denied specially that plaintiff was entitled to possession of the premises, and generally denied "each and every allegation contained in said petition except what is hereinafter specially admitted." For further answer it stated that the defendant was placed in possession of the premises under a contract executed by plaintiff to sell and convey the same to defendant, and

set forth a true copy thereof. It is dated June 30, 1905, signed by the plaintiff and his wife as parties of the first part, who, by its terms, agreed that if defendant, the party of the second part, should first make the payments and perform the covenants therein contained to be kept and performed by him, they would convey to him the premises in fee, clear of incumbrances, by warranty deed. The defendant was to pay the sum of $3000 in twelve semi-annual payments, due respectively on the first days of January and July of each year, beginning January 1, 1906, the last being due July 1, 1911, without interest. It was further provided as follows: "And in case of the failure of said party of the second part to make either of the payments or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said parties of the first part in full satisfaction and in full liquidation of all damages by them sustained and they shall have the right to re-enter and take possession of the premises aforesaid; and it is mutually agreed by and between the parties hereto that in construing this contract time shall be an essential." These payments were evidenced by promissory notes, payable as stated above. The answer then proceeded to state that the premises in suit consisted of lands on which was situated a small steam flouring mill in a crude, unfinished and dilapidated condition, erected in 1901; that it was operated for a year or more and then abandoned for about two years, and, at the time of its purchase by defendant, had so deteriorated as to be almost valueless; that its abandonment by plaintiff was brought about by financial embarrassment due to the incapacity of the mill to earn a profit without large improvements and additions to its equipment,

and plaintiff consented and agreed that the improvements must be made before it could be successfully operated; that by reason of these facts plaintiff sold to defendant and put him in possession of the mill on deferred payments without interest, and that defendant would have to expend large sums of money in rebuilding and improvements and additions to said mill, and it was agreed that defendant would add a complete and finished corn milling plant, a large platform wagon scales with dump and suitable shed over the same, with corn drag and wheat conveyors from said dump, and additional elevators in the mill; ''that in consideration of the improvements and additions to be made on said mill and in consideration of the very large expenditure of money by the defendant, the plaintiff sold to defendant the said milling plant and the land as described as aforesaid without the payment of any sum of money in advance by defendant to plaintiff, it being agreed and understood that said improvements and additions were absolutely necessary to put the mill in a serviceable condition; that it was agreed and understood by and between the plaintiff and defendant that said improvements and additions to be made at the cost and expense of the defendant would amply secure the plaintiff for any default in the deferred payments of the notes of the defendant as aforesaid; that it was agreed and understood by and between the plaintiff and defendant that until said mill was placed in a condition to earn a profit, by making the improvements and additions as aforesaid, it would be impossible for the defendant to pay off and discharge and extinguish his said notes or any of them; that the defendant did on being placed in possession of the premises as aforesaid by plaintiff, diligently proceed, at once, in good faith to the. building and completion of all the aforesaid improvements and additions, and many more, under the contract and agreement by and between the plaintiff and defendant as aforesaid, at

his own expense, and, did as rapidly as possible and practical under the circumstances, put the milling plant in perfect repair and good order for successful operation; that all of said improvements and additions were made with the full knowledge and consent and contract and agreement of the plaintiff."

It then set out an itemized account of the money so expended between the date when defendant took possession of the mill and November 2, 1905, amounting to $1822.98, and stated that defendant had paid cash, on the notes without giving dates therefor amounting to $175, and that the mill was worth $2500 more than at the time of the purchase, and that defendant went into possession and made the said improvements by the authority of the plaintiff, and did not hold adversely to plaintiff but under and by authority from him, and that there were no other writings between them than the contract and notes mentioned. The answer asked judgment for the sum of $1997.90, the amount of the expenditure for improvements and cash paid on the notes, less any amount that might be found by the court to be due for rent, and that the sum be adjudged and declared a first lien on the real estate described in the petition, including the milling plant thereon, and that plaintiff be enjoined and restrained, "or that execution be stayed by order of record of this court until such time as the plaintiff shall have paid to the defendant the amount of his judgment and filed the receipt of the defendant therefor with the clerk of this court; that all of defendant's notes described in the plaintiff's articles of agreement be cancelled and for naught held and esteemed by the order and judgment of this court, and for such other and further relief as may be proper." The plaintiff then filed his motion to strike out "the following portion of defendant's answer, viz.: beginning with the ninth line on the fourth page of defendant's answer and including all the portion following

except the prayer, the same being that portion of defendant's answer that attempts to charge the plaintiff with the value of improvements,'' for the reason, among others, that it does not state facts sufficient to constitute a cause of action or entitle the defendant to any relief. This motion was overruled by the court and thereupon the plaintiff applied for and the court granted a change of venue transferring the case to the Greene County Circuit Court, where the plaintiff filed a demurrer to the answer, which, omitting the title, is in words and figures as follows:

"Now comes the plaintiff and demurs to the defendant's answer excepting the general denial for the following reasons, viz.:

"1. Said answer does not state facts sufficient to constitute any cause of action against plaintiff or any defense to plaintiff's action.

"2. Upon the allegations of defendant's answer the plaintiff is entitled to recovery.''

The demurrer was thereupon sustained by the court, and the defendant refusing to plead further the court entered a judgment by default against him and, proceeding to hear evidence, found all the issues for plaintiff and assessed his damages at one cent and the value of the monthly rents and profits at twenty dollars per month and entered judgment for the possession of the property together with the damages and monthly rental.

I. The sustaining of the demurrer so emasculated the answer that it contained nothing but a general denial. This constitutes a complete defense to the cause of action stated in the petition. It was, therefore, error for the court to enter default and proceed thereon to final judgment while it stood as a pleading in the case.

The defendant, however, in the part of the answer held insufficient on demurrer, had pleaded a special

defense inconsistent with the general denial, in that it set up that he was in possession of the premises under the plaintiff by virtue of a contract of purchase which had already become subject to forfeiture. In avoidance of this admission he pleaded certain matters which he claims entitled him to rescind the contract and to have affirmative relief, and he now claims that as to these matters the demurrer was improperly sustained and his real defense eliminated.

The first ground urged by defendant in support of this contention is that the same questions had been previously raised by motion to strike out substantially the same parts of the same answer, and that the overruling of this motion constituted a final adjudication of all the questions so raised. Ordinarily this result, by which black may be made white and the crooked straight by the dictum of the court, can only proceed from a final judgment. This seems to accord with both the letter and spirit of our own practice, in which all the decisions of the court made in course of a trial, are, if questioned, required to be reviewed upon the motion for a new trial, so that the court may then have an opportunity of correcting and revising its decisions. The question, however, does not seem to have been made or preserved in this record, where there is nothing to show that it was brought to the attention of the court. The defendant might have waived it, and gone directly to the merits of the controversy. If he did not desire to do this he could have made his motion to strike out the demurrer or could have taken such other course upon the record as would apprise the court of his intention. Having failed to do so he will not be permitted to raise the question in this court.

We do not think that there is anything in this inconsistent with any expression of Judge SHERWOOD in Baisley v. Baisley, 113 Mo. 544, 550.

II. The contract of purchase under which the defendant was in possession, provided, as we have seen, that if he should fail to make any payments that it required, it should, at the option of the vendor, be forfeited and determined, and the payments theretofore made upon it should be retained in full satisfaction of all damages sustained by him, and that he might re-enter and take possession of the premises. The exercise of this option would thus extinguish, not only the right to charge the unpaid purchase price upon the land but also his right to damages up to the time of such forfeiture and re-entry therefor. The answer pleaded, in connection with this contract, that there was a contemporaneous oral agreement that the defendant should make certain improvements, which were necessary before the mill could be operated, which, it was agreed, would increase the security of the plaintiff for the deferred payments of the purchase price, and which were therefore intended for the benefit of the plaintiff as well as of the defendant, and that the defendant made these improvements at an expenditure of $1822.98, and thereby increased the value of the property to the extent of $2500. Having done this he failed to make the payments as they became due and the plaintiff, by this suit, has exercised his election to forfeit the contract and re-enter the premises and now asserts that he is entitled to not only the liquidated damages provided in the contract, amounting to $175 paid him upon the purchase price, but also to have the improvements made in compliance with the oral agreement. This, he says, is so nominated in the obligation; while the defendant asserts that he has in equity the right to be reimbursed for the improvements and have the same charged upon the body of the property on which they were made. This difference in opinion is the foundation of the real question in the case. It was directly presented by the demurrer to that part of the answer stricken out by the court.

At the time the common law of England was brought to this country by our ancestors the action of ejectment was an altogether fictitious proceeding, in which the damages were nominal only, and it remained so in those States in which the common law was adopted until changed by statute. The owner recovered his land without being required to pay for improvements, which were considered as annexed to the freehold and passing with recovery. Another remedy was given the plaintiff for his injury by being kept out of the premises, in the way of an action of trespass for mesne profits. [3 Sedgwick on Damages (9 Ed.), Sec. 901.] This action is a liberal and equitable one which will allow every equitable kind of defense. [*Id.*, Sec. 915 and note.] Nothing is more reasonable than that the bona fide possessor of land should be reimbursed out of the rentals for valuable and permanent improvements made by him in good faith, while in possession, with the consent and at the instance of the owner, and we find that the practice of permitting such compensation to be offset in actions for mesne profits has prevailed both in this country and in England for many years. For instance, in Coulter's case, 3 Coke, 30, decided more than three hundred years ago it was said: "The disseisor shall recoup all the damages which he hath expended in amending the houses;" and in 8 Viner's Abridgment, p. 556 (Title, Discount, case 3), it was said: "Damages of forty shillings and no more were found by the assize, because the land is sown, and the houses well amended, and so recouped the damages." Approaching nearer to our own time, it was said by KENT, J., in Murray v. Gouverneur, 2 Johnson's Cases, 438: "As to the sum expended by the appellant for repairs, it may be left for liquidation, in an action for the mesne profits, if the respondents should think proper to sue for the rents and profits. The action for mesne profits is a liberal and equitable action, and will allow of

every kind of equitable defense.'' In our own State this right of recoupment was not considered broad enough to permit the doing of justice in all cases, inasmuch as it afforded the occupant no relief except out of the rents and profits, while it was thought that in those cases in which the occupants make improvements not only in good faith, believing themselves to have good title, but not having any notice of the title or claim asserted by the true owner, they should have a broader and more complete remedy. To meet this supposed want the law was enacted which is now embodied in section 2401 and following, of the Revised Statutes of 1909. That this law was not intended to take away any remedy that had theretofore existed but to afford a more complete remedy out of the body of the improved estate in those cases that come within its provisions, is settled by numerous adjudications in this State. [Mann v. Doerr, 222 Mo. 1; Dawkins v. Griffin, 195 Mo. 430; Tice v. Fleming, 173 Mo. 49; Henderson v. Langley, 76 Mo. 226; Fenwick v. Gill, 38 Mo. 510; Dothage v. Stuart, 35 Mo. 251.]

In those jurisdictions where the recovery of rents and profits in ejectment is permitted, the same rule applies as in actions for mesne profits at common law. The improvements may be recouped against the damages recovered on account of rents and profits. It is recognized that this is just because, in most cases, as in this, it is the improvements that earn the rental. In cases arising under the Missouri statute to which we have referred, a separate suit must be brought according to the practice there prescribed to charge the improvements against the land. The statute however, takes away no right of this character that existed before the enactment. It excludes by its terms all actions between vendor and vendee and between landlord and tenant, because vendees and tenants have notice of the titles of their vendors and landlords. It is useless to speculate here as to what other relations

Montgomery v. Gahagan.

in which the common law remedy was so allowed may be included in or excluded from the terms of this statute, but one or the other of these remedies applies in all cases in which the right existed at common law.

While the defendant is not entitled to the relief he asks in his answer, we think the facts stated constitute a good defense against the damages alleged in the petition. The plaintiff had, as was his right, exercised his election to forfeit the contract of sale, instead of proceeding to collect the purchase price by charging it upon the land, which would have permitted the defendant to reimburse himself for his improvements out of any surplus which might be left after satisfying that claim. This left no other course open to defendant than to seek, somewhere in the proceeding, compensation for his improvements, made not only with the acquiescence of, but under an agreement with, the plaintiff. He filed an answer disclosing his rights, which was held bad on demurrer; and notwithstanding his general denial was still left, a default was entered and immediately proceeded upon to final judgment. That this was in direct disregard of the statute cannot be questioned, but it is answered that as only nominal damages were assessed no substantial right of the defendant was violated. It is a sufficient answer to this to say that the plaintiff, in pursuit of his strict legal rights must conform to the remedies the law has prescribed as conditions to its aid.

The judgment of the Greene County Circuit Court is accordingly reversed, and the cause remanded to be proceeded with in accordance with this opinion.

PER CURIAM. — The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.