[No. 21176. Department One. October 11, 1928.]

D. W. Warren, *Respondent*, v. National Surety
Company, *Appellant*.[1]

Robert B. Abel, for appellant.

E. R. York and George O. Swasey, for respondent
and cross-appellant.

Mitchell, J.—A. E. Anderson, Inc., owned lot 8,
block 1, "Map of Law's Addition to Tacoma City" in
Pierce county. Desiring to erect a dwelling house

[1]Reported in 271 Pac. 69.

on it, the owner adopted plans and specifications for the building; and upon commencing the building or shortly thereafter, in order to procure money to finance the job, borrowed six thousand dollars from the College of Puget Sound, upon its approval of the plans and specifications for the building. The owner executed and delivered a five year note in the sum of six thousand dollars, dated April 14, 1926, payable to the college and bearing interest at six and one-half per cent per annum; interest to be paid semi-annually, else principal and interest to become due and collectible at the option of the holder of the note, and to bear interest after maturity at the rate of twelve per cent per annum, the maker reserving the right to pay five hundred dollars, or multiples thereof, on due dates of interest.

At the same time and to secure the payment of the note, the owner of the property gave to the college a mortgage in the sum of six thousand dollars upon the lot, describing it, together with the tenements, hereditaments, appurtenances and fixtures "now or hereafter belonging to or used in connection with the building," and covenanted to keep the buildings insured for the benefit and protection of the mortgagee. The mortgage was promptly recorded. At the same time, and as a part of the same transaction, the owner, as principal, and the National Surety Company of New York, as surety, executed and delivered to the college a bond in the sum of six thousand dollars. The bond, upon reciting the fact that the college had made or agreed to make a mortgage loan of six thousand dollars upon the premises described, including the new dwelling house, further provided:

"Whereas, the said principal, A. E. Anderson, Inc., is desirous of securing from said obligee, payments on this mortgage, from time to time, as the work on

said dwelling house progresses; said payments never to exceed the total amount of Six Thousand and No/100s Dollars ($6000), and payments in advance thereon to be made only by the obligee on the approval of Arthur H. Middleton, representing the surety hereon.

"Now, THEREFORE, the condition of this obligation is such that if the said principal, A. E. Anderson, Inc., shall complete the dwelling house and improvements upon the above described property, according to plans and specifications now approved by College of Puget Sound, and shall pay and discharge all liens and claims arising against said premises, for the construction and completion of said dwelling house and improvements, and shall hold the said College of Puget Sound, an educational corporation of Tacoma, Washington, harmless from any loss, cost or damage, by reason of any such liens or claims, then this obligation shall be null and void, otherwise to remain in full force and effect."

The college furnished money for the building to the amount of six thousand dollars. Before it was completed, however, A. E. Anderson, Inc., became insolvent and its affairs were put into the hands of a receiver. Upon the insolvency of that company, the receiver refused to proceed further with the construction of the building; whereupon the holder of the note, mortgage and bond notified the surety company of the default, and that there were outstanding claims for labor and material against the building, and demanded that the surety company finish the building and pay all liens and charges connected therewith. This the surety failed to do.

Then, in consideration of six thousand dollars and interest due, paid by Mrs. D. W. Warren, the College of Puget Sound endorsed the note "without recourse", executed a written assignment of the mortgage, executed a written assignment of the bond and

all and every interest therein, authorizing the assignee to take any and all measures, legal or otherwise, to compel the performance of the conditions of the bond and to enforce collection thereof in case of default, and delivered all of the instruments and the assignments to Mrs. Warren.

About the same time, her business agent and adviser, who, as secretary of A. E. Anderson, Inc., had signed the note and mortgage, became the owner of the mortgaged property. Upon his advice, Mrs. Warren, acting through him, had the building completed at the reasonable cost of $2,347.86, as decided at the trial. A number of persons who had furnished labor and material on the building while A. E. Anderson, Inc., was engaged on the building had filed notices of claim of lien on the premises; and upon the advice of her business agent, Mrs. Warren paid all the lien claimants, taking assignments of their respective claims. These as adjusted and corrected at the trial, together with the amount she paid to have the building completed, exceeded six thousand dollars, the amount of the bond.

Thereupon this action was brought by Mrs. Warren against the receiver of A. E. Anderson, Inc., and the National Surety Company to recover on the bond in the sum of six thousand dollars. The National Surety Company answered by appropriate general denials and several legal and equitable affirmative defenses, which latter were put in issue by a reply. Upon the trial of the case without a jury, the decision was in favor of the plaintiff, and from a judgment in the sum of six thousand dollars, and interest from date of the judgment, and for costs against the receiver and the National Surety Company, the latter has appealed.

Generally, the contention of the appellant is that, contrary to the decision of the superior court, the

bond in suit is one of indemnity only upon which recovery may not be had without proof of actual damage; that it was not assignable by the obligee, the College of Puget Sound; that the liens of all laborers and materialmen arising as they did after the mortgage was recorded were inferior to the lien of the mortgage, and that the payment of them by the holder of the mortgage was voluntary and gave no right of action on the bond; and that respondent's proper remedy was foreclosure of the mortgage without paying the other liens and without completing the building.

The respondent contends to the contrary in all respects, and that the condition and covenants of the bond are affirmative contracts in the nature of guarantees, upon the breach of which she had her right of action on the bond. There is, also, a disputed question of fact between the parties as to whether respondent or her business adviser furnished the money to finish the building and pay the lien claimants, he being at the time the owner of the property. The trial court found that her money was used, which finding, in our opinion, is supported by a preponderance of the evidence.

██ ██ Counsel have elaborately discussed the question of the character of the bond, and cited many cases upon the subject. The arguments have been helpful, but the cases cited will, upon examination, show that they are not near enough like the present one in material respects to justify a review of them. It may be said that the tendency of the modern authorities is to adopt, as the correct principle to be applied in the construction of such bonds, that compensation can only be given for loss actually sustained, provided, of course, the parties have not stipulated for other and more extensive remuneration. That is, the correct rule is to give more weight to the general

purpose of the bond, as indicated by all of its provisions, and the interests of the parties in the subject-matter, than the precise form of words used in a particular clause; or, as said in *Evans v. United States Fid. & Guar. Co.,* 195 Mo. 438, 192 S. W. 112, in speaking of the bond of a compensated surety:

"The bond is to be construed in the same way as any other contract, that is, with regard to the intention of the parties and the purpose of the bond, as disclosed by the instrument, read in the light of the surrounding circumstances."

In this case, the loan manifestly was not intended primarily as an accommodation, as if it had been made for a few months or less, but as an investment. It had the possibility of a term of years at a good rate of interest which greatly increased after maturity of the note. The unimproved lot of land, worth about one thousand five hundred dollars, was not reasonable security; so that, in order to provide ample security, the plan and purpose adopted was to erect a house on the lot the whole to be included in the mortgage. But the premises must be free and clear of all claims of lien; and if it be admitted that the mortgage recorded would be a prior lien, it often happens, as many cases show, that a subsequent lienor claims that, by the conduct of the holder of a prior lien, or otherwise, the apparent prior lien has become inferior, resulting often in expensive litigation, whether such claim be established or not.

The college had a right to provide against any such contingency or risk. It had the right to say it wanted premises as security for the loan that were free from the claim of every other person than the owner, its mortgagor, and was willing to pay for that kind of contract and security. Therefore, the owner was called upon to furnish the bond, and the six thousand dollars,

supplied by the college, was compensation or consideration for the note, the mortgage and the bond, in which bond the principal and surety agreed not only that the principal would indemnify the college against loss, cost, or damage by reason of liens or claims (possibly some already outstanding and earned, as the building was partly constructed at the time the loan was made), but they further covenanted and agreed that the principal would complete the building and improvements and pay all liens and claims against the property.

The bond was a part of the security for the payment of the note and in our opinion was assignable by the one to whom it was made without the consent of the surety; and upon failure of the owner to prosecute the work, and the refusal of the surety to do so after notice of the principal's default in that respect, the holder of the securities was justified in completing the building and paying outstanding liens and claims as proper charges against the bond in protection of her security. Nor was the holder of the mortgage compelled to foreclose it. She was entitled to continue it as an investment and to protect it as such. To so continue it in no way violated the rights of the appellant under the terms of the bond.

However, there was in appellant's answer an appeal for just and equitable relief, under the pleadings and facts in the case. It is clear that all the money for which the respondent now recovers judgment went into improvement of the property. It also appears, upon plaintiff's own proof, that the principal debtor, A. E. Anderson, Inc., became and is insolvent. The present owner of the property, though not a nominal party to the action, upon being called by the respondent as a witness, testified that, in taking title to the property, he knew the property was responsible for charges or liens of the laborers and materialmen, and

that it was upon his advice, after he became the owner of the property, that the respondent paid them.

While the obligation of the appellant as surety was direct to the holder of the bond, it was secondary in its relation to the principal debtor, A. E. Anderson, Inc., now insolvent, and upon being met by the surety, clearly suggests an equitable claim in favor of the surety upon the property that received the benefit of the expenditures. Under these circumstances, it is only just and equitable, upon the payment by the appellant of the judgment now awarded against it, to require the respondent to execute and at that time deliver to the appellant an assignment of any and all right or interest, or right of action legal or equitable, she had or may have against the principal debtor, and as affecting the property involved on account of payments made by her in completing the building and satisfying liens filed against it, to the amount of the judgment only, all such rights so assigned to be subordinate and inferior to her rights under her note and mortgage; and that the judgment appealed from should be modified to provide accordingly.

The respondent has cross-appealed because the court refused to allow interest prior to judgment, in addition to the six thousand dollars with interest from the date of judgment. Under the facts and circumstances of the case and the law applicable, we think there was no error in this respect.

Remanded with directions to modify the judgment as herein indicated.

FULLERTON, C. J., TOLMAN, BEALS, and ASKREN, JJ., concur.