[No. 22136.   Department Two.   August 26, 1930.]

GEORGE O. SWASEY, *Respondent*, v. P. E. FARR, *Defendant*, AMERICAN SAVINGS AND LOAN ASSOCIATION, *Respondent*, COLUMBIA CASUALTY COMPANY, *Appellant*.[1]

[1]Reported in 290 Pac. 866.

*Roberts, Skeel & Holman* and *Elwood Hutcheson,* for appellant, Columbia Casualty Company.

*E. R. York* and *George O. Swasey,* for respondent George O. Swasey.

*William R. Lee,* for respondent American Savings and Loan Association.

MITCHELL, C. J.—Mrs. Ida B. Dennison, the owner of lot 6, block 2, of "Map of Fern Hill, W. T.," now a portion of Tacoma, Washington, on July 12, 1926, entered into a written contract with Mr. P. E. Farr, a contractor, by which he agreed to move a dwelling house to the rear of the lot and remodel the house, also to construct a new building on the front of the lot in consideration of $20,000, of which amount $6,500 was acknowledged to have been paid by Mrs. Dennison. The portion of the contract material here, upon enumerating the improvements to be made, recites they were to be made—

" . . . for the sum of twenty thousand dollars ($20,000) payable as follows, to wit: on said contract there has been paid by the party of the first part to the party of the second part the sum of six thousand five hundred dollars ($6,500), the receipt of which amount is hereby acknowledged by the party of the second part as part payment for said work. The balance of the consideration is to be paid as follows: A mortgage is to be placed on said property running to the American Savings and Loan Association of Tacoma, Washington, in the amount of thirteen thousand five hundred dollars ($13,500) and said money is to be used exclusively on paying the balance of the consideration for said work, labor and material."

The statement that $6,500 had been paid was not true, although it appears that Mrs. Dennison delivered to P. E. Farr some securities upon which he was to, and did attempt to, realize, without any success.

On August 6, 1926, carrying out the plan of the parties, Mrs. Dennison executed and delivered to the American Savings and Loan Association (hereinafter called the loan association) her mortgage on the property in the sum of $13,500, with the understanding that no money would be paid until the $6,500 was furnished by or on behalf of Mrs. Dennison and used in the improvements. This mortgage covered the property as it then existed, together with improvements to be put upon the property for the making of which this money was borrowed, the appraisal of the property as thus improved being fixed for the purpose of making the loan at the sum of $27,000. The mortgage was recorded on August 11, 1926, but no money was furnished thereon until all or a part of the money furnished later by Mr. George O. Swasey had been used on the building, within the knowledge of the loan association.

About September 1, P. E. Farr commenced making the improvements, and, a week later, needing money to meet his payroll, Mrs. Dennison not being able to furnish any, he applied to George O. Swasey for a loan of $3,000. The application was made to him by P. E. Farr at the suggestion of Mr. Mahaffay, of Mahaffay & Company, agents of the bonding company who furnished the bond involved in this controversy, that George O. Swasey was a money lender. George O. Swasey, upon being apprised of the terms of the building contract; that Mrs. Dennison had not supplied the $6,500 or any portion of it; that the $13,500 mortgage had been given by Mrs. Dennison and that the contemplated contractor's bond had not been given, loaned $3,000 to the contractor to be used to meet the payroll, as George O. Swasey testified, until Mrs. Dennison could raise the money that she was supposed to have advanced; while P. E. Farr testified that the $3,000 was in the nature of a personal loan to him, saying in

one portion of his testimony that about all of it was used in meeting the payroll on this building, and at another time testifying that more than half of it was so used. George O. Swasey testified that he was to be repaid out of the money obtained on the mortgage, and insisted, before loaning the money, that his name be mentioned in the bond. Accordingly, on the 7th day of September, 1926, there was signed and delivered to George O. Swasey the following order:

"September 7th, 1926.
"To the American Savings and Loan Association:
"Please pay to the order of George O. Swasey thirty-three hundred ten dollars, for money furnished to pay for material and labor used at lot 6, block 2, Fern Hill, Pierce county, and charge to Loan 722.
"(Signed) P. E. Farr,
"Name
"O. K.                            131 Perkins Bldg.,
"Ida B. Dennison;                 Address."

and, at the same time, as part of the same transaction, George O. Swasey was advised of and shown the bond given by the Columbia Casualty Company (hereinafter called the casualty company), involved in this suit, which is as follows:

"LIEN BOND
"KNOW ALL MEN BY THESE PRESENTS: That we, P. E. Farr, an individual, as Principal, and THE COLUMBIA CASUALTY COMPANY OF NEW YORK, as surety, are held and firmly bound unto Ida B. Dennison, George O. Swasey and American Savings and Loan Association in the penal sum of thirteen thousand five hundred and no/100ths dollars ($13,500) for the payment of which, well and truly to be made, we hereby bind ourselves, our heirs, administrators and legal representatives.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals at Tacoma, Washington, this 7th day of September, A. D. 1926.

"THE CONDITION of the above obligation is such, that

Whereas the said P. E. Farr has entered into a contract to build and complete the business block, dwelling house and improvements for the said Ida B. Dennison, George O. Swasey and American Savings and Loan Association, free from liens on lot six (6), block two (2), Fern Hill, Tacoma, Washington.

"Now, Therefore, the condition of this obligation is such that if the said principal, P. E. Farr, shall complete the business block, dwelling house and improvements upon the above described property, according to plans and specifications now approved by Ida B. Dennison, and shall pay and discharge all liens and claims arising against said premises, for the construction and completion of said business block, dwelling house and improvements, and shall hold the said George O. Swasey and American Savings and Loan Association, of Tacoma, Washington, harmless from any loss, cost or damage by reason of any such liens or claims, within nine months from date hereof, then this obligation shall be null and void, otherwise to remain in full force and effect.      P. E. Farr, Principal.

"The Columbia Casualty Company
"By R. E. Mahaffay, *Attorney in Fact.*"

George O. Swasey did not take any note from Mrs. Dennison or P. E. Farr.

Upon receiving the order on the loan association, George O. Swasey commenced, on September 8, to furnish money to P. E. Farr, and continued to do so until September 27, in the total sum of $3,000. After getting the order, and about September 15, he notified the loan association of it. The loan association refused to honor the order except upon condition that that much of the $13,500 mortgage loan should be left after the building was completed, stating that they did not propose to pay any side loans to Mrs. Dennison or P. E. Farr out of the mortgage money. Again, on September 27, Mrs. Dennison assigned, in writing, the $13,500 mortgage loan to P. E. Farr, and he indorsed on the assignment an order on the mortgagee to pay

George O. Swasey the sum of $3,310, which assignment and order the mortgagee, the loan association, refused to accept and approve.

On September 16, George O. Swasey notified the mortgagee that he would expect payment after the mortgagee was satisfied that all lien claims and costs of construction had been paid, and again, on January 27, 1927, not having received payment, he demanded in writing that the loan association pay his claim and that he would hold it responsible for such payment. Some time the latter part of November or during the month of December, 1926, the buildings being incomplete, the contractor failed and refused to further perform the contract. Upon notice to the casualty company of that fact, it also failed and refused to complete the construction, claiming that it had been defrauded in the procurement of the bond. At that time, the loan association had advanced for the enterprise $11,089.97, thus leaving $2,410.03 of the mortgage funds unexpended, and, in the meantime, a large number of unpaid bills for labor and material were outstanding or continuing to be incurred, for which notices of claims of liens were filed.

In the circumstances, in a suit by Mrs. Dennison alone, commenced in February, 1927, against P. E. Farr, a receiver, under the appointment, directions and orders of the superior court, used the remaining $2,410.03 of the mortgage funds towards the completion of the buildings and cost of the receivership, whereupon on July 18, 1927, the receiver was discharged, still leaving the buildings incomplete.

On September 12, 1927, the loan association commenced an action in the superior court of Pierce county (being cause No. 60,290 in that court) to foreclose its mortgage in the principal sum of $13,500; making Mrs. Dennison and her husband and all those

persons who had filed labor and material liens parties defendant. The casualty company was not a party to that action. All the defendants appeared, and, upon the trial of that case, judgment was entered on February 10, 1928, in favor of the plaintiff in the sum of $15,381.23, which was adjudged to be a first and prior lien on the lot involved as against all of the defendants; also judgment was entered that defendants who had furnished labor and material in the total sum of $5,267.52 or their assignee have judgment in that amount against the premises, which was decreed to be a second and subsequent lien to the lien of the loan association. The judgment further ordered that the real property be sold by the sheriff at execution sale to satisfy the judgment. It appears that nothing has yet been done in that case by way of sale or execution to satisfy the judgment.

The present action was commenced by George O. Swasey, the second amended complaint being filed October 28, 1927, against P. E. Farr, the casualty company, the loan association and Ida B. Dennison to recover on the bond, and that the rights and liabilities of the parties to the bond be determined and for other and further relief as to the court may appear to be proper. All the defendants appeared and answered. The court tried the case without a jury, and, on March 9, 1929, made and entered extensive findings and conclusions and a judgment against the casualty company.

Pertinent to this appeal, the court found that the amount due the lien claimants or their assignee (though not parties to this action), as found and determined in cause No. 60,290 of the superior court of Pierce county, hereinbefore referred to, should be, and it was, reduced from $5,267.52 to $4,762.02, in which latter amount judgment was given in favor of the loan association against the casualty company.

The court made a further finding which supports a further judgment in favor of the loan association against the casualty company in the sum of $2,410.03.

Another finding was made that supports a judgment entered in favor of the plaintiff, George O. Swasey, against the casualty company in the sum of $3,310, with interest at six per cent per annum on $3,000 from September 27, 1927. Mrs. Dennison was not allowed to recover anything, and her cross-complaint was dismissed without prejudice.

The casualty company has appealed.

One contention on the part of the appellant, to which most attention has been given by the parties in this court, is that the bond was obtained by fraud in that the appellant was misled into the belief that Mrs. Dennison had expended or furnished to be expended on the improvements the sum of $6,500, as mentioned in the building contract, and that appellant would not have given the bond had it been advised of the true fact that such amount had not been furnished. Our examination of the evidence satisfies us, however, that, upon the execution and delivery of the bond, the general agent of the appellant who negotiated the sale of the bond knew or had good reason to believe that Mrs. Dennison had not furnished the money or any part of it. Such knowledge on the part of the agent was binding on his principal, the casualty company that issued the bond.

Those portions of the judgment that are against the appellant purport, of course, to rest upon the terms of the bond, under the facts. In the case of *Warren v. National Surety Company*, 149 Wash. 378, 271 Pac. 69, having under consideration a bond like the one in the present case, we quoted with approval the rule announced in *Evans v. United States Fidelity & Guaranty Co.*, 195 Mo. 438, 192 S. W. 112, as follows:

"The bond is to be construed in the same way as any other contract, that is, with regard to the intention of the parties and the purpose of the bond, as disclosed by the instrument, read in the light of the surrounding circumstances."

It is for the application of this rule that we have gone somewhat at length into the surrounding circumstances of the parties at the time the bond in this case was executed, and into subsequent conduct with reference to it. The bond is made by P. E. Farr, as principal, and the casualty company as surety, and runs to Ida B. Dennison, George O. Swasey and the loan association.

The conditions of the bond are three: First, that P. E. Farr shall complete the improvements, concerning which condition of itself nothing is involved in this appeal, because, while there was a finding that $300 would be required to finish the building, nothing on that subject is mentioned in the judgment, the respondents seeming to have waived it in the preparation of and taking the judgment in the case. The second and third conditions are that the principal shall pay and discharge all liens and claims on account of making the improvements, and shall hold George O. Swasey and the loan association harmless from any loss, cost or damage by reason of such liens or claims within nine months of the date of the bond.

That portion of the judgment in the sum of $4,762.02 against the casualty company is stated in the judgment to be for the benefit of the lien claimants who obtained judgment in the superior court, cause No. 60,290. It may be mentioned that they or their assignee were not parties to this action, nor was the casualty company a party to the action No. 60,290 in the superior court, wherein the lien claimants' rights were adjudicated. But, more important, the bond in

this suit does not run to the lienors, and the condition in the bond that the principal should pay and discharge those liens was a promise to, and intended for the protection of, the obligees named in the bond, and it is difficult to see how, at this time, either of the respondents can insist upon the payment of those liens. The loan association, in a direct action for that purpose, has obtained an adjudication that all those lien claims are subordinate and inferior to its mortgage, upon which it obtained a decree of foreclosure. It is wholly immaterial, therefore, to the rights of the loan association whether or not those lien claims are ever paid; while, as to the respondent Swasey, he is in no way interested in the title to, or right of possession of, the property adjudged to be subject to the liens, nor was he a party to the action by which those liens were established against the property. If, in a proper proceeding, with the proper parties before the court, he had procured, or should procure, a judgment declaring himself to have an equitable lien upon the property to the extent of money furnished by him to the contractor and proven to have been actually used in making the improvements, and that such equitable lien claim could not be collected without resort to the bond given by the casualty company, a different situation would be presented, in our opinion. Certainly, by the terms of the bond, the casualty company did not agree to repay him the amount of money he loaned to the contractor.

The case of *Warren v. National Surety Co.*, 149 Wash. 378, 271 Pac. 69, already referred to, seems to be relied on by the respondents. But that case and this one are materially different, and to decide this case upon the rule of that one would be an unwarranted extension of that rule. In that case, in the protection of a loan made to improve property, a bond

similar to the one in the present action was furnished. The assignee of the mortgage and of the mortgagee's rights under the bond, in good faith, purchased outstanding liens against the property improved, and then sued the bonding company to make it pay those liens. It may be mentioned parenthetically that, in establishing the liens in that case, the claimants or their assignee were parties to the action against the bond company, and presented issues and proof in detail as to each lien claimed and established. That was not done in the present case.

More important, however, in that case, the bond company contended that the plaintiff therein should have foreclosed the mortgage which was alleged by the bond company to be a prior lien to those of laborers and materialmen. But it appeared to us that the loan was intended as a long-time investment, and that the lender or its assignee was entitled to the benefit of the bargain, and that, because liens which, upon their faces, appear to be subsequent and inferior are sometimes, for various reasons, found to be superior, it was held that, in order to continue the investment free from the claims of the liens filed in that case and litigation they might cause, the lender should be allowed to compel the bond company to pay the liens upon its being subrogated to the rights of those liens against the property and subject also to the lien of the mortgage, without the latter being foreclosed. Here, however, the loan association has chosen voluntarily not to continue its investment as a mortgage, and has foreclosed it, and, in doing so, has, at the same time and in the same action, bringing in the lien claimants, procured an adjudication that all the liens for labor and material are inferior to its mortgage, so that its rights with reference to the property are as though no lien had ever been claimed or filed.

310

As to the other portion of the judgment in favor of the loan association in the sum of $2,410.03, it is perfectly clear, in our opinion, that it is for the same money furnished by the loan association to the receiver appointed for the purpose of continuing to make the improvements to the extent of the remaining portion of the mortgage funds of $13,500, that was so used, and that was included in the mortgage foreclosure judgment which, as already noticed, was declared to be superior and prior to the liens of the laborers and materialmen.

Reversed with directions to enter judgment in favor of the appellant.

MAIN, FULLERTON, HOLCOMB, and FRENCH, JJ., concur.

[1]Reported in 290 Pac. 806.