Filed 7/22/24  Weinstock Family Trust v. Shaw CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WEINSTOCK FAMILY TRUST et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DANIEL J. SHAW et al., <br><br> Defendants and Respondents. | H050438 <br> (Santa Clara County <br> Super. Ct. No. 22CV397831) |

Plaintiffs filed the present action in April 2022 to challenge debt collection activities taken against them under a sister state judgment entered in California in September 2016.  Defendants in this action filed a special motion to strike plaintiffs' complaint under Code of Civil Procedure section 425.16 (special motion to strike, or anti-SLAPP motion).[1]  The trial court granted the special motion to strike the complaint by order filed September 1, 2022.

This matter arose out of a nearly two-decades-old Washington real estate development project in which the developer was SV 261, LLC (hereafter, sometimes referred to as Developer).  In 2007, Developers Surety & Indemnity Company (Surety)

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)
  Further statutory references are to the Code of Civil Procedure unless otherwise stated.

issued a surety bond on the project. In connection therewith, Surety required Developer, as principal, to execute an indemnity agreement (Indemnity Agreement or Agreement) requiring Developer to pay Surety any bond premiums and to hold Surety harmless for any obligations it incurred under the bond on behalf of Developer. Surety also required that a number of Developer-affiliated entities and individuals sign the Agreement as indemnitors.

Developer defaulted under the Indemnity Agreement, and Surety filed suit against it and the indemnitors in the state of Washington (the Washington action).[2] In September 2014, Surety obtained a judgment in the Washington action (Washington Judgment) against, among others, three of the plaintiffs herein, Michael Weinstock, Marissa Weinstock, and Weinstock Family Trust. The next month, Surety filed a special proceeding in California for entry of a sister state judgment (sister state proceeding) to enforce the Washington Judgment; that sister state judgment was entered on October 14, 2014.[3] Through multiple assignments, the Washington Judgment was assigned to Sunnycove Capital Inc. (Sunnycove) in or about November 2016. Approximately five years later, Sunnycove commenced collection activities in the sister state proceeding against plaintiffs and appellants herein, Michael and Marissa Weinstock, Allyson Weinstock (their adult daughter), and Weinstock Family Trust (hereafter, collectively, appellants).

Appellants filed the present action alleging six causes of action, challenging the activities in the California sister-state proceeding to collect on the Washington Judgment. Appellants contended that any efforts to collect on the Washington Judgment against them were unlawful, because the underlying debt had been "extinguished." The

---

[2] The Washington action was filed on July 29, 2013, in the Superior Court of Washington, County of Spokane, case No. 13-2-03051-3.

[3] The sister state proceeding was filed in the Superior Court of California, County of Santa Clara, case No. 2014-1-CV-271852.

defendants in the present action—who were likewise, with one exception (Sunnycove), named defendants in the Washington action—are Daniel Shaw, Amber Shaw, Gerald Shaw, Janet Shaw, Shaw 1993 Living Trust, W&S Investments, Inc. (W&S), and Sunnycove. (Hereafter, the defendants in the present action are collectively referred to as respondents.)

As noted, respondents filed a special motion to strike the complaint An anti-SLAPP motion is resolved through a two-step process in which the court decides (1) if the defendant has shown that the challenged claim arose out of his or her constitutionally protected petitioning or speech activity; and (2) assuming the defendant has met his or her burden to show he or she was engaged in protected activity, "whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).) Respondents contended below, inter alia, that appellants' entire action was barred under the anti-SLAPP statute because the suit was based upon respondents' exercise of their constitutionally protected activity of participating in court proceedings, namely, the enforcement of the Washington Judgment entered in the California sister state proceeding. Respondents contended further that appellants could not establish the second prong, i.e., probability of prevailing, because (1) the claims were barred by the litigation privilege as provided under Civil Code section 47, subdivision (b) (Civil Code section 47(b)); and (2) the litigation privilege bar notwithstanding, appellants could not establish the legal merits of their claim that the underlying debt represented by the Washington Judgment was extinguished.

In its order granting the special motion to strike, the trial court concluded that respondents had met their burden under the first prong of the anti-SLAPP motion of establishing that the claims alleged in the complaint arose out constitutionally protected activity. The trial court held further that appellants had failed to meet their burden of showing a probability of prevailing on the claim because the litigation privilege under

3

Civil Code section 47(b) operated as a bar to at least some, if not all, of the claims, and, in any event, appellants had not shown a likelihood that they would prevail on any claims.

Appellants challenge the trial court's order in which it concluded that the litigation privilege applied and that appellants had failed to show a probability that they would prevail on the claim. Appellants also challenge the trial court's separate order denying their motion for preliminary injunction. We conclude that the trial court did not err in granting the special motion to strike under the anti-SLAPP statute. We conclude further that appellants' challenge to the order denying preliminary injunction is not cognizable on appeal because appellants did not file a timely appeal from that separate, appealable order. We will therefore affirm the order granting the special motion to strike the complaint.

## I. PROCEDURAL BACKGROUND

### A. Complaint

On April 22, 2022, appellants filed a complaint alleging six causes of action. The complaint named respondents as defendants: Daniel Shaw, Amber Shaw, Gerald Shaw, Janet Shaw (collectively, the Shaws), the Shaw 1993 Living Trust, W&S, and Sunnycove.

The underlying facts and contentions as alleged in the complaint were largely based upon the history of prior litigation and purported collection efforts by respondents in 2021 in the sister state proceeding. Appellants alleged that (a) the Judgment was entered in the Washington action on September 12, 2014; (b) the named defendants in the Washington action included appellants (save Allyson Weinstock), and respondents (save Sunnycove);[4] (c) respondents filed a pleading in the sister state proceeding stating that the Washington Judgment had been entered in the Washington action against W&S and the

---

[4] The Washington Judgment is not part of the appellate record. From what this court can glean, it appears that the judgment amount was in excess of $606,000.

Shaws, individually and in their corporate capacities; (d) on October 14, 2014, Surety applied for and obtained a sister state judgment in California in the sister state proceeding; (e) on September 19, 2016, Surety assigned the Washington Judgment, "and all right to collect the 'sister state judgment', to W&S"; (f) on November 17, 2016, W&S assigned the Washington Judgment, and all rights to collect on it, to Sunnycove, which entity has the same Los Gatos address as W&S; (g) the Shaws were officers and owners of W&S and Sunnycove; (h) appellants had been "targeted by and subject to conduct, including . . . communications under the guise of legal proceedings, and other actions, through third party emissaries, initiated by Sunnycove's counsel . . . seeking to assert a right to enforce a sister state judgment that has been extinguished by [respondents'] conduct"; (i) the collection actions to which appellants had been subjected included interference with their property rights "through levy, holding of bank account funds, wage garnishment notices and charging order motions";  and (j) respondents had engaged in "unlawful, unfair, and/or fraudulent acts or practices, including . . . asserting a right to collection that [was] not supported [by] law and seeking to recover monies to which [they were] not entitled."

Appellants sought a permanent injunction (first cause of action) preventing respondents from engaging in further debt collection practices and compelling them to return any funds wrongfully collected.  They also sought a judicial determination in equity that the obligation under the Washington Judgment and the judgment entered in the California sister proceeding had been extinguished, and that respondents collection efforts were barred.  Appellants requested further that they receive a declaratory judgment (sixth cause of action) that respondents had no right to assert a claim relative to appellants' property. And appellants asserted legal claims for damages under theories of conversion (second cause of action), intentional infliction of emotional distress (third cause of action), and financial elder abuse, on behalf of Michael Weinstock, only

5

(fourth cause of action), and a statutory claim for violation of Business and Professions Code section 17200 (fifth cause of action).

## B.      The Indemnity Agreement

Although not specifically referred to in the complaint or attached as an exhibit, the Indemnity Agreement was the basis for Surety bringing the Washington action.  It was attached to the complaint in that action.[5]  The Indemnity Agreement was referenced and discussed in both the motion, the opposing memorandum, and Michael Weinstock's declaration filed in opposition to the motion.  The Agreement is relevant to these proceedings and is therefore summarized here.

---

[5] The declaration of Daniel Shaw in support of the anti-SLAPP motion included as an exhibit an unfiled complaint by Surety in Washington state court dated January 9, 2009, which included as an attachment the Indemnity Agreement.  That complaint was, according to the declaration, purportedly the complaint filed in the Washington action. Although not noted by the parties below, the Shaw declaration did not attach the applicable complaint (but did include the correct Indemnity Agreement).

On appeal, at or about the time the reply brief was filed, appellants filed a request for judicial notice of four documents.  They sought judicial notice of exhibit 1, a certified copy of the *correct* complaint filed in the Washington action, noting that an incorrect version had been filed by respondents below in support of their special motion to strike. This version of the complaint, filed July 29, 2013, and showing the filing number of the Washington action, attaches the same version of the Indemnity Agreement presented in the Shaw declaration in support of the anti-SLAPP motion.  In the interests of presenting a proper appellate record, we grant the request for judicial notice of exhibit 1.  Appellants also request judicial notice of an assignment from Surety to W&S filed October 31, 2016 (exhibit 2), an assignment from W&S to Sunnycove filed November 17, 2016 (exhibit 3), and an acknowledgment of assignment of judgment filed by Sunnycove on December 1, 2021 (exhibit 4).  These documents were not before the trial court.  "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court.  Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]"  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  There are no "exceptional circumstances" (*ibid.*) that justify deviating from this rule, and we will therefore deny appellants' July 24, 2023 request for judicial notice as to exhibits 2, 3, and 4.

On January 3, 2007, Surety, SV 261, LLC, as principal, and various individuals and entities, as indemnitors, executed the Indemnity Agreement. The indemnitors executing the Agreement included plaintiffs Michael Weinstock, Marissa Weinstock, and Weinstock Family Trust, as well as defendants Daniel Shaw, Amber Shaw, Gerald Shaw, Janet Shaw, Shaw 1993 Living Trust, and W&S. ~ The Agreement was entered into in consideration of Surety's execution of any bonds on behalf of the Developer and principal, SV 261, LLC. The principal and the indemnitors agreed to "indemnify and hold harmless Surety from from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses . . . which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal," including, inter alia, payment of bond premiums, and "[l]iability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to of Principal's nonperformance of an Obligation or any other matter covered by a Bond."

C.   **Preliminary Injunction Motion**

Appellants filed an ex parte application for a temporary restraining order seeking an order restraining respondents from taking any collection efforts regarding the judgment entered in the California sister state proceeding. The court denied the application, and it set the matter for a hearing on appellants' request for a preliminary injunction. After the parties' submission of moving and opposing papers, and after a hearing, the court denied appellants' motion on July 14, 2022, concluding that appellants had failed to demonstrate a likelihood of prevailing in the matter.

### D. Special Motion to Strike

In June 2022, respondents filed a special motion to strike the complaint under the anti-SLAPP statute, section 425.16 et seq.[6] Appellants opposed the motion. Respondents submitted their reply in support of the motion.

After argument, the court adopted its tentative ruling and granted respondents' special motion to strike the complaint. The court also denied without prejudice respondents' request for attorney fees and costs. In its order filed September 1, 2022, the trial court held that respondents had established the first prong of the special motion to strike by showing that the claims alleged in the complaint arose from respondents' protected activity, namely their efforts to enforce a judgment. The court held further— addressing the second prong of the motion—that it was apparent that, at minimum, the litigation privilege under Civil Code section 47(b) operated as a complete defense to appellants' claims for damages based upon conversion, intentional infliction of emotional distress, and elder abuse. The court held further that, even were the litigation privilege found inapplicable, appellants failed to meet their burden of establishing, through the evidence they presented, legally and factually sufficient causes of action; the court therefore concluded that appellants had not shown a probability that they would succeed on the merits of their claims, and thus did not satisfy the second prong.

Appellants filed a notice of appeal from the order granting respondents' special motion to strike the complaint.

## II. DISCUSSION

### A. Anti-SLAPP Motions to Strike

A SLAPP suit is one in which a plaintiff "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress

---

[6] This court ordered the appellate record augmented to include respondents' declaration of counsel and memorandum of points and authorities in support of their motion to strike.

of grievances. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*).) SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, which is "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The Legislature has directed that the language of the statute be "construed broadly." (§ 425.16, subd. (a).)

Subdivision (e) of section 425.16 identifies four general categories of protected activities of petition or free speech: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." The exercise of speech or petitioning rights potentially subject to anti-SLAPP protection under clauses (1) and (2) is not limited to actions that concern an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

A motion to strike under section 425.16 is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made

9

a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  (§ 425.16, subd. (b)(1).)" (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.)  The second step the court considers in addressing the special motion to strike—if it finds that the defendant has shown that the cause of action arose out of conduct that constituted protected activity—is "whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid*.)  In this step, the plaintiff is required to show that its claim has "at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  Thus, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*) , original italics.)

### B.    Standard of Review

"Review of an order granting or denying a motion to strike under section 425.16 is de novo.  [Citation.]  We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)  However, we neither 'weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)  In performing our de novo review, we " 'conduct[] an independent review of the entire record.  [Citations.]' " (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.)  "[O]ur review is conducted in the same manner as the trial court in considering an anti-SLAPP motion.  In determining whether the

10

defendant . . . has met its initial burden of establishing that the plaintiff's . . . action arises from protected activity, we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2); [citations].) The second prong—i.e., whether the plaintiff . . . has shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions. [Citation.] '[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " [Citations.]' " (*Ibid.*)

We review the trial court's decision, not its rationale. "If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. [Citation.]" (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.)

### C.    Anti-SLAPP Motion:  Underlying Conduct Was Protected Activity (First Prong)

We address the first step in the analysis of a special motion to strike, namely, whether respondents, as the moving parties, sustained their burden of establishing that the cause of action arose out of activity that is protected under the anti-SLAPP statute. (See *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) Respondents here were required to "establish both (1) that [their] act constituted protected activity and (2) the opposing party's cause of action *arose from* that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130, italics added.) Respondents contend that they made that threshold showing.

In determining whether the cause of action is one "arising from" the defendant's protected activity (§ 425.16, subd. (b)(1)), "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.

11

[Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89), original italics; see also *Park*, *supra*, 2 Cal.5th at p. 1062 ["claim arises from protected activity when that activity underlies or forms the basis for the claim"].)  It is not enough for the defendant to show that the plaintiff's lawsuit was filed *after* the defendant engaged in protected activity, or that the claim was " 'triggered' by protected activity." (*Navellier*, *supra*, at p. 89.)  The only method specified by statute for a moving party to show that the challenged claim " 'aris[es] from' " his or her protected conduct is if that conduct "falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' [Citation.]" (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66.)

" 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citations.]  'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen*, *supra*, 37 Cal.4th at p. 1056; see also *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759 ["a claim based on actions taken in connection with litigation falls 'squarely within the ambit of the anti-SLAPP statute's "arising from" prong' "].)  "Under the plain language of section 425.16, subdivision (e)(1) and (2), . . . all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480.)

Courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.)  "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.)  Postjudgment enforcement actions are likewise protected

activity under the anti-SLAPP statute because they represent continuation of the litigation and preparatory steps to execute on a judgment. (See, e.g., *O'Neil-Rosales v. Citibank (South Dakota) N.A.* (2017) 11 Cal.App.5th Supp. 1, 6 (*O'Neil-Rosales*) [recordation and presentation of judgment lien]; *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134-135 (*O'Keefe*) [recordation of abstract of judgment].) This is because "[u]ndeniably, . . . enforcement proceedings are an extension of the judicial process and are related to the realization of a litigation objective." (*Brown v. Kennard* (2001) 94 Cal.App.4th 40, 49, fn. omitted (*Brown*).) Protected activity also includes "communications in connection with anticipated litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263 (*Neville*).) And a defendant may establish the first prong of showing the activity to be constitutionally protected *even if the alleged activity is unlawful*. (See *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 165-166.)

Scrutinizing the complaint in this case, the claims asserted by appellants are plainly ones that "aris[e] from" respondents' petitioning activity, namely, "any written or oral statement or writing made before a . . . judicial proceeding"; respondents' alleged conduct is plainly activity that is constitutionally protected under section 425.16, subdivisions (b)(1) and (e). Appellants' complaint is replete with allegations asserting the impropriety and/or illegality of respondents' protected litigation activity, i.e., their efforts to enforce through judicial processes the Washington Judgment in the California sister state proceeding—claimed by appellants to be extinguished—including assertions as follows:

(a) "[respondents] have committed a conspiracy to enforce an unenforceable and extinguished judgment against [appellants], and others";

(b) respondents, unless enjoined, will continue to conduct their illegal enforcement efforts to the irreparable harm of appellants and others;

(c) respondents "have refused to cease and desist from the wrongful conduct and continue to pursue collections";

13

(d) appellants "will continue to suffer irreparable harm absent issuance of an immediate injunction enjoining [respondents'] conduct[,] and their unsupported collection activity including but not limited to the use of the California Court system, motions for charging orders[,] the use of the sheriff's departments of sundry counties throughout California to levy accounts and the use of wage garnishment notices";

(e) respondents "have and will continue to abuse the California courts and collection process as well as using the procedures allowed through the use of county sheriffs' offices to levy against funds belonging to [appellants] and will continue to seek to garnish wages owed to [appellants], and/or to seek charging orders against interests alleged to be owned by [appellants]";

(f) "the conduct by [respondents] . . . is intended to collect funds and property interests belonging to [appellants]"

(g) "in support of this 'collection' action, and in furtherance of the conspiracy to obtain funds through such collection conduct, [respondents] . . . have caused to be provided affidavits to third parties including but not limited to sheriffs, banks and employers, which state, under penalty of perjury, that the affiants, [respondents] and those acting on [their] behalf . . . , are rightfully entitled to assert the means to collect as against the identified 'sister state judgment'[,] and that [appellants] owe the amounts identified";

(h) "[respondents] . . . continue to persist and will continue to persist in their conduct in pursuit of the collection of the extinguished judgment unless enjoined by this Court";

(i) "[a]n actual controversy exists as between [appellants] and [respondents] . . . regarding and relating to the conduct of [respondents] and the assertion of a right to collect as against [appellants] and their property interests and future conduct by [respondents] to collect on an extinguished co-obligation and/or judgment"; and

14

(j) "[appellants] pray for an equitable judicial determination that [respondents] . . . are barred [from] us[ing] collection conduct to pursue the collection asserted; and that [appellants] are entitled to the return of all funds held pursuant to such conduct on behalf of, for, or by [respondents], and that the asserted right to collect on the 'sister state judgment' has been extinguished through the conduct of [respondents]."

The complaint is further replete with additional references to respondents' alleged misconduct, including "the collection conduct complained of," "wrongful collection actions," "wrongful acts to seek collection of funds," "violations of law," "unlawful conduct," "said collection action," "collection conduct." and similar allegations. It is thus beyond question that the underlying complaint involves the constitutionally protected petitioning activity of respondents and that the claims asserted by appellants " 'arise[] from' [respondents'] protected speech or petitioning activity" (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66), namely, their postjudgment enforcement actions made in efforts to collect on the Washington Judgment. (See, e.g., *O'Neil-Rosales*, *supra*, 11 Cal.App.5th Supp. at p. 6; *O'Keefe*, *supra*, 84 Cal.App.4th at pp. 134-135.)

Appellants present no substantive discussion to refute that the claims alleged in their complaint "aris[e] from" (§ 425.16, subd. (b)(1)) petitioning activity of respondents that is constitutionally protected. Instead, appellants assert conclusorily: "Neither the relief sought by Appellants [n]or the conduct by [respondents] involved protected speech or petitioning activity or public issues." We reject this conclusory and undeveloped argument. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for

15

the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)[7]

Appellants' apparent attempt to refute respondents' having met their burden of establishing the first prong in support of their special motion to strike appears to be based upon *the nature of the relief sought* in their complaint, *not* whether the conduct of respondents alleged in the complaint arose from respondents' constitutionally protected activity. Appellants argue that the fact that they sought equitable relief in their complaint—namely, declaratory and injunctive relief—rendered the anti-SLAPP statute inapplicable to their pleading. Appellants—ignoring the fact that four of the six claims in the complaint seek damages for respondents' alleged conduct—assert nonetheless that the "complaint sounds in equity" and therefore the pleading did not implicate respondents' protected activity.

There is no merit to appellants' argument. As we have discussed, the critical issue for decision in determining whether the moving party defendant has satisfied the first prong of an anti-SLAPP motion is whether the conduct complained of in the challenged complaint "arise[s] from" the constitutionally protected activity of the defendant. (§ 425.16, subd. (b)(1).) As the California Supreme Court has clearly explained: "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights." ' [Citation.] 'Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who

---

[7] Likewise, appellants' conclusory statement that "[t]he conduct alleged by [respondents] as 'protected' activity is not protected for all of the reasons identified . . ." is without foundation.

16

has exercised certain rights' [citation]." (*Navellier*, *supra*, 29 Cal.4th at pp. 92-93, original italics; see also *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671 (*Peregrine Funding*) ["a court considering a special motion to strike must examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed"].)  Moreover, contrary to appellants' apparent position, claims in equity, such as ones for declaratory or injunctive relief, *are* potentially subject to a special motion to strike if the underlying activity alleged in the complaint arises out of the defendant's protected activity.  (See, e.g., *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67 [defendant established first prong of anti-SLAPP motion by showing that plaintiff's claims for declaratory and injunctive relief arose out of defendant's constitutionally protected activity].)

Appellants cite *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269 (*Weeden*) in support of their position that the form of action alleged is determinative as to whether the action concerns conduct that arises from protective activity.  *Weeden* concerned a lawsuit for quiet title, cancellation of instrument, and slander of title arising out of the defendant's recordation of an abstract of judgment.  (*Id.* at pp. 279-280.)  It thus did *not* include equitable claims for declaratory relief or for injunctive relief.  The *Weeden* court said nothing about the form of the action having an effect upon a defendant's establishing the first prong of a special motion to strike.  Rather, *Weeden* held merely that, *in the separate context of the potential application of the litigation privilege of Civil Code section 47(b),* ordinarily, the privilege applies to tort actions but not an action to enforce a contract.  (*Weeden*, *supra*, at p. 288; see *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 428 ["although courts may use the litigation privilege 'as an aid' in determining whether a given communication arises out of protected activity, the litigation privilege and anti-SLAPP statute serve different purposes and are not necessarily coextensive"].)  Here, although we are addressing the first prong, not the potential application of the litigation privilege as a defense, the alleged wrongdoing of

17

respondents plainly arises out of their attempts to enforce a judgment, not to pursue a contract remedy. *Weeden* offers no support for appellants' position.[8]

Respondents established their burden under the first prong of the anti-SLAPP statute of showing that the underlying complaint involves the constitutionally protected petitioning activity of respondents and that the claims asserted by appellants " 'aris[e] from' " [respondents'] protected" conduct (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66), namely, their postjudgment enforcement actions made in efforts to collect on the Washington Judgment in the California sister state proceeding.[9]

---

[8] Appellants' counsel notified this court in writing that at oral argument (scheduled three days later), that he intended to rely on two cases not cited in appellants' opening or reply briefs. The cases identified were *Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831 (*Conseco Marketing*), and *Li v. Jin* (2022) 83 Cal.App.5th 481 (*Li*). This submission was improper under California Rules of Court, rule 8.254(a). Such a submission is permitted only when "significant new authority, including new legislation, . . . was not available in time to be included in the last brief that the party filed or could have filed . . . ." (Cal. Rules of Court, rule 8.254(a).) We will therefore disregard it. (See *Center for Healthcare Education and Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1129, fn. 9.)

Further, at oral argument, appellants' counsel, citing and discussing *Conseco Marketing*, *supra*, 221 Cal.App.4th 831, and *Li*, *supra*, 83 Cal.App.5th 481, asserted that respondents' judgment-enforcement conduct was not protected activity for an additional reason. Appellants' counsel argued that because the clerk's entry of the judgment in the California sister state proceeding was merely a ministerial act, this sister state proceeding was not, in fact, a "judicial proceeding" or a "proceeding" under section 425.16, subdivision (e)(1) and (2) of the anti-SLAPP statute. This is a new legal argument that appellants did not raise in their briefs. We will therefore disregard this argument. (See *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 ["[a]bsent a sufficient showing of justification for the failure to raise an issue in a timely fashion, we need not consider any issue which, although raised at oral argument, was not adequately raised in the briefs"].)

[9] Appellants do not argue that respondents failed to establish the first prong of the anti-SLAPP motion because the complaint contained causes of action that were "mixed in that they [were] based on both protected and unprotected activity." (*Peregrine Funding*, *supra*, 133 Cal.App.4th at p. 672; see also *ibid.* [" 'where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 (continued)

18

**D. Anti-SLAPP Motion:  Probability of Success Not Shown (Second Prong)**

There were two aspects of the second prong of the special motion to strike addressed by the parties and the court.  They were (1) whether appellants' claims were barred by the litigation privilege, and (2) irrespective of the litigation privilege, whether appellants had "demonstrated a probability of prevailing on the claim." (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.)

### 1. *Litigation Privilege*

Respondents contend that each of appellants' claims in the complaint is barred by the litigation privilege under Civil Code section 47(b).  They assert that because the conduct complained of all involved communications made in a judicial proceeding (i.e., the California sister state proceeding), they are covered by the litigation privilege.  Although the plaintiff bears the burden in resisting a special motion to strike of establishing under the second prong that plaintiff's claims have merit, the defendant bears the burden of proving any affirmative defenses.  (See *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 769; see also *id.* at pp. 769-770 [defendants in arguing anti-SLAPP motion should be granted, met their burden of establishing that defamation claim was barred by litigation privilege].)  Nonetheless, in addressing the second prong of an anti-SLAPP motion, "a plaintiff must show that any asserted defenses are inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses.  [Citation.]" (*Weeden*, *supra*, 70

---

unless the protected conduct is "merely incidental" to the unprotected conduct' "].)  As the California Supreme Court has explained, "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded [in the analysis of whether the defendant has met the first prong of the special motion to strike]. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)  Respondents clearly established that the allegations in the complaint arose out of protected activity.

Cal.App.5th at p. 288; see also *Neville, supra*, 160 Cal.App.4th at p. 1263, fn. 7 [if alleged conduct is subject to litigation privilege, plaintiff cannot establish probability of prevailing to defeat an anti-SLAPP motion].)

As stated by the California Supreme Court, "the [litigation] privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) " '[C]ommunications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen, supra*, 37 Cal.4th at p. 1057.) The absolute litigation privilege furthers "the important public policy of assuring free access to the courts and other official proceedings. It is intended to ' "assure utmost freedom of communication between citizens and *public authorities whose responsibility is to investigate and remedy wrongdoing*." ' " (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360, original italics.)

The litigation privilege only protects communications and publications. (*Rusheen, supra*, 37 Cal.4th at p. 1058.) Thus, as the California Supreme Court has explained, a threshold issue in determining whether the privilege applies "is whether . . . conduct is communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Ibid.*) The court in *Rusheen* held further that "[t]he '[p]leadings and process in a case are generally viewed as privileged communications.' [Citation.]" (*Ibid.*) Thus, the

litigation privilege has been held to apply to "abuse of process claims alleging the filing of false or perjurious testimony or declarations. [Citations.]" (*Ibid.*)

The California Supreme Court in *Rusheen*, *supra*, 37 Cal.4th at pages 1061 to 1065, addressed a split of authorities concerning whether postjudgment execution efforts were subject to the absolute litigation privilege of Civil Code section 47(b). Agreeing with *Brown*, *supra*, 94 Cal.App.4th 40, which held that the litigation privilege applied to seeking a writ of execution *and* the subsequent levy on property, and thus disagreeing with a more narrow application of the privilege in *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, the *Rusheen* court concluded that "where the gravamen of the complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to necessarily related noncommunicative acts (i.e., act of levying)." (*Rusheen*, *supra*, at p 1062.) The high court explained that "[e]xtending the litigation privilege to postjudgment enforcement activities that are necessarily related to the allegedly wrongful communicative act is consistent with public policy considerations. The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation[.] [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, '[i]n furtherance of the public policy purposes it is designed to serve, the privilege . . . has been given broad application.' [Citation.]" (*Id.* at p. 1063.)

Applying *Rusheen* to the circumstances here, it is clear that the absolute litigation privilege acts as a bar to appellants' claims. The gravamen of appellants' complaint is a challenge to respondents' collection efforts in the sister state proceeding relative to the Washington Judgment. Appellants allege in their complaint that they "have been targeted by and subjected to conduct, including but not limited to communications under the guise

21

of legal proceedings, . . . through third party emissaries, initiated by Sunnycove's counsel of record, seeking to assert a right to enforce a sister state judgment that has been extinguished by the conduct of [respondents]." Appellants complain about respondents' allegedly improper collection activity of bringing motions for charging orders, seeking the issuance of levies and wage garnishment orders, causing funds in bank accounts to be held.

Thus, the core of appellants' allegations of wrongdoing consists of communicative acts in furtherance of postjudgment collection activities, or, as appellants allege, "communications under the guise of legal proceedings, . . . through third party emissaries, . . . seeking to assert a right to enforce a sister state judgment that has been extinguished . . . ." (See *Rusheen*, *supra*, 37 Cal.4th at p. 1058 ["[t]he '[p]leadings and process in a case are generally viewed as privileged communications' "].) Just as in *Rusheen*, "the gravamen of the complaint [was] a privileged communication (i.e., allegedly perjured declarations of service)" (*id.* at p 1062), here, the gravamen of appellants' complaint appears to be, as appellants allege, privileged communications consisting of "provid[ing] affidavits to third parties including but not limited to sheriffs, banks and employers, which state, under penalty of perjury, that the [respondents] . . . [were] rightfully entitled to assert the means to collect as against the identified 'sister state judgment'[,] and that [appellants] owe[d] the amounts identified." Further, under *Rusheen*, the litigation "privilege extends to necessarily related noncommunicative acts" (*id.* at p. 1062) complained of by appellants, such as levying and garnishment activity, execution against bank accounts, and arranging for charging orders. Moreover, there appears to be no question that the litigation privilege applies to each of the six causes of action of the complaint that are founded upon common factual allegations. (See *Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 662 "[t]he only recognized exception to the privilege is actions for malicious prosecution"]; see also *Silberg*, *supra*, 50 Cal.3d at pp. 215-216.)

Although appellants assert that the actions complained of were "not communicative . . . [and] were not protected by the litigation privilege," they present no apposite authority for their position. Appellants argue that because they did not attack the entry of the Washington Judgment or the judgment in the sister state proceeding, the litigation privilege cannot be asserted as a defense. Again, appellants offer no legal support for this argument. (See *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [appellate courts "need not consider an argument for which no authority is furnished"].) Appellants have failed to refute the fact that, based upon the allegations of the complaint, the collection activities complained of involve " '[c]ommunications with "some relation" to judicial proceedings' " (*Rusheen*, *supra*, 37 Cal.4th at p. 1057) and "privilege[d] . . . postjudgment enforcement activities that are necessarily related to the allegedly wrongful communicative act[s]" (*id.* at p. 1063). Applying the litigation privilege " 'broad[ly]' " (*ibid.*), the privilege clearly applied as a complete defense to the claims alleged in appellants' complaint.

### 2. *Failure to Meet Burden of Showing a Probability of Prevailing*

Although appellants complaint was subject to respondents' special motion to strike because the underlying claims were subject to the absolute defense of the litigation privilege under section 47(b), even were we to assume the privilege inapplicable to one or more of the claims, appellants nonetheless failed to meet the second prong in opposing the motion.[10]

The central grounds for appellants' challenge to respondents' attempts to enforce the Washington Judgment in the sister state proceeding, as alleged in the complaint, are that the judgment was extinguished by the actions of respondents. As alleged by

_____

[10] The trial court, although seemingly concluding that the litigation privilege acted as a bar to at least three of the causes of action alleged in the complaint (conversion, intentional infliction of emotional distress, and elder abuse), proceeded with an analysis (assuming the privilege's inapplicability) of whether appellants showed a probability of success.

appellants, the actions consisted of a co-obligor, W&S, having paid the underlying obligation, and the judgment creditor, Surety, having thereafter assigned the judgment entered in the California sister state proceeding to W&S. It was alleged that an actual controversy existed concerning "the conduct of the Shaw Defendants and the assertion of a right to collect as against [appellants] and their property interests and future conduct by the Shaw Defendants to collect on an extinguished co-obligation and/or judgment." And as argued by appellants' counsel at the hearing, "The gravamen of the case remains and has always been that the obligation was extinguished and that there's nothing to support the underlying judgment."

Appellants confirmed in their memorandum in opposition to the anti-SLAPP motion that they contended that respondents' collection efforts were unlawful because the debt had been extinguished because it was paid off by a co-obligor, W&S. Appellants identified the controversy as being centered on their "defense that the underlying 'debt' . . . was extinguished under California law based on the payment in full by W&S, a principal obligor, [and] that the 'debt' . . . was not properly preserved," and could not be pursued by W&S's assignee, Sunnycove. In support of their position, appellants cited *Great Western Bank v. Kong* (2001) 90 Cal.App.4th 28 (*Great Western*), a case upon which they also rely extensively in this appeal. Further, in opposing the special motion to strike, appellants submitted the declaration of Michael Weinstock, who declared repeatedly that W&S was "a principal obligor" under the Indemnity Agreement.

As we discuss, the underlying grounds asserted by appellants for challenging respondents' actions to enforce the Washington Judgment in the sister state proceeding are flawed for several reasons.

> ### a. Full Faith and Credit/Sister State Money Judgments Act

We are constrained to note that the present lawsuit concerns a challenge to respondents' alleged enforcement efforts relative to a judgment originally entered in another state (i.e., the Washington Judgment) that was the basis for entry of a separate

24

judgment in the California sister state proceeding.  The matter implicates both the United States Constitution and California statutes.

As was recently explained by the Fourth District Court of Appeal, Division One, "Article IV, section 1 of the United States Constitution states that '[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.'  *For judgments, 'the full faith and credit obligation is exacting.'*  [Citation.]  Pursuant to this constitutional mandate, '[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.  For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force.'  [Citation.]  Thus, ' "[i]t has long been the law that 'the judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced.' " '  [Citations.]  [¶] 'Moreover, " '[while] it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of [the Supreme] Court have carefully delineated the permissible scope of such an inquiry.  From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.' " '  [Citation.]  [¶] Accordingly, '[u]pon a claim that a foreign judgment is not entitled to full faith and credit, *inquiry into the legality of proceedings in a court of a sister state is narrowly circumscribed by case law.*  The permissible scope of inquiry upon such a party is limited to whether the court of rendition has "fundamental" jurisdiction [citation].  In other words, a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the

parties and the subject matter and all interested parties were given reasonable notice and an opportunity to be heard.' [Citations.]" (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 958-959, italics added (*Casey*).)

Here, the special proceeding for entry of a sister state judgment based upon the Washington Judgment was, by appellants' admission, initiated in California in or about 2014, with judgment entered in California in October 2014. The proceeding would have been brought pursuant to the California Sister State Money Judgments Act (§ 1710.10 et seq.; the Act). The Act was "[p]artially in response to the constitutional mandate of full faith and credit." (*Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 114.) Under the Act, a judgment creditor may submit an application in California "for the entry of a judgment based on a sister state judgment." (§ 1710.15, subd. (a).) An application by a judgment creditor under the Act "cannot be characterized as an 'action at law' under the common law or a 'suit in equity' under equity practice. [Citation.]" (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 843-844.) Rather, it is a special proceeding. (*Ibid.*) As such, "the Act to enforce sister state money judgments *does not require the filing of an action to obtain recognition of the judgment*." (*Id.* at p. 845, italics added.)

As explained by one court, "[T]he Act provides a judgment creditor with the right to enforce a sister state monetary judgment as if it were a California judgment against the judgment debtor. Upon simple application in conformance with the Act [citations], entry by the clerk of a judgment based upon the application is mandatory [citation], constituting a ministerial act of the clerk and not a judicial act of the court [citations]. 'This statutory scheme manifests a legislative intent that its use or applicability be predicated upon a judgment first obtained and rendered outside of this state. The judgment in this state, following the judgment of a sister state, is ministerial only, that is, an activity by the clerk of this court.' [Citation.] Where the judgment debtor fails to challenge the matter, the judgment will be entered and the application will have served its

purpose, all without any judicial act having been performed by the court.  [Citations.]"  (*Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1203.)

A party may bring a motion to vacate a judgment entered on a sister state judgment "on any ground which would be a defense to an action in this state on the sister state judgment."  (§ 1710.40, subd. (a).)  The defenses available include "the judgment is not final and unconditional . . . ; the judgment was obtained by extrinsic fraud; the judgment was rendered in excess of jurisdiction; the judgment is not enforceable in the state of rendition; the plaintiff is guilty of misconduct; the judgment has already been paid; suit on the judgment is barred by the statute of limitations in the state where enforcement is sought."  (§ 1710.40, com.)  The party moving to vacate the judgment bears the burden of establishing by a preponderance of the evidence his or her entitlement to such relief.  (*Conseco Marketing*, *supra*, 221 Cal.App.4th at p. 841.)  Such a motion must be filed "[n]ot later than 30 days after service of notice of entry of judgment pursuant to Section 1710.30."  (§ 1710.40, subd. (b).)  The procedure specified in section 1710.40 provides "[t]he sole ground for vacating a [judgment entered on a] sister state judgment."  (*Liquidator of Integrity Ins. Co. v. Hendrix* (1997) 54 Cal.App.4th 971, 979; cf. *Casey*, *supra*, 79 Cal.App.5th at p. 962 [§ 1710.40 "is part of a procedural enactment that implements the full faith and credit clause . . . , which is an 'exacting' constitutional mandate"].)

It would thus appear that appellants' first and only procedural line of challenging the entry of the California sister state judgment was through the procedure specified in section 1710.40.  There is no evidence in the record that appellants asserted such a statutory challenge in the sister state proceeding.  Indeed, there is no evidence that appellants filed *any* papers in the sister state proceeding challenging the judgment or contesting respondents' alleged enforcement proceedings that resulted in appellants' later filing of this separate lawsuit.  It would have been a straightforward matter, for example,

for appellants to have filed in the California sister state proceeding a motion to quash the writ of execution based upon a showing that the judgment had been satisfied. (See, e.g., *Colby v. Colby* (1954) 127 Cal.App.2d 602, 605.) Likewise, appellants could have (but apparently did not) employ the procedure delineated under section 724.050. Under that statute, appellants could have made a demand upon the assignee of the Washington Judgment to provide a satisfaction of judgment, and then, assuming no satisfaction was provided, could have then brought a motion to compel compliance with the demand. Moreover, appellants do not identify the legal authority which supports their entitlement to challenge the enforcement of the sister state judgment by filing a separate action for damages and equitable relief. These omissions negate a showing by appellants of a probability of prevailing on the claim.

### b. Submission of Inadmissible Evidence

In meeting its burden of establishing the second prong of an anti-SLAPP motion—probability of prevailing—it is undeniable that the proof the plaintiff is required to present " 'must be made upon competent admissible evidence.' [Citations.]" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*); see also *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 480; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017.) As explained, "An assessment of the probability of prevailing on the claim looks to *trial*, and the evidence that will be presented at that time. [Citation.] Such evidence must be admissible. [Citation.] . . . [T]he plaintiff's burden of establishing 'facts to sustain a favorable decision if the evidence submitted . . . is credited'[citation] implies a requirement of admissibility, because 'otherwise there would be nothing for the trier of fact to credit.' [Citation.] At trial, 'the testimony of a witness concerning a particular matter is inadmissible unless he [or she] has personal knowledge of the matter.' [Citation.] An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim." (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497-1498, original italics.)

28

Therefore, "declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26 [considering plaintiff's showing of probability of prevailing in opposing anti-SLAPP motion].)

In this case, the principal foundational matter upon which appellants base their challenge to respondents' efforts to collect on the sister state judgment entered in California—that W&S signed the Indemnity Agreement as a principal obligor—is based on nothing more than allegations in appellants' unverified complaint, argument of counsel in her memorandum opposing the anti-SLAPP motion, and the declaration of Michael Weinstock. As noted, Michael Weinstock declared repeatedly that W&S was a principal obligor. Each such statement was plainly inadmissible.

Michael Weinstock's conclusory statements directly contradicted the terms of the Indemnity Agreement, which plainly identified Developer, SV 261, LLC, as the "principal" debtor for which Surety agreed to issue bonds, and identified as indemnitors various other signatories, including, specifically, W&S.[11] More to the point, Michael Weinstock's statements regarding his belief as to the status of W&S as a principal obligor were inadmissible.[12] "[A] witness is incompetent to give an opinion on the meaning of the contract language. [Citation.]" (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 715.) This inadmissibility principle applies equally to a statement interpreting contracts made in a declaration opposing an anti-SLAPP motion, because it constitutes "improper lay opinion as to the meaning and legal effect of a contract." (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424,

---

[11] Additionally, the allegations in Surety's complaint filed in the Washington action were that SV 261, LLC, signed the Indemnity Agreement "as principal," and various individuals and entities, including W&S, signed the Agreement "(as indemnitors)."

[12] Respondents objected to the admissibility of Michael Weinstock's declaration. The trial court did not specifically rule on respondents' objection.

1444.)  Clearly, statements in the Michael Weinstock declaration concerning the declarant's lay opinion concerning the meaning of the subject Agreement were inadmissible, and they provided no support for appellants' position that there was a probability they would prevail on their claims.[13]

### c.     Absence of Supporting Legal Authority

As noted, appellants place significant reliance upon *Great Western*, *supra*, 90 Cal.App.4th 28 in support of their position that the payment by W&S of the Washington Judgment and the subsequent assignment of that judgment by Surety to W&S extinguished any obligation under the judgment.  Appellants' analysis is flawed.

We observe initially that appellants present no cogent argument or legal authority why California law would apply to determine whether the underlying obligation has been extinguished.  It is at least equally plausible that the law of the state where the underlying obligation arose and the debt collection action was prosecuted, Washington, would apply.

A review of the Indemnity Agreement discloses that there is only one named principal, Developer (SV 261, LLC).  All other signatories, including W&S, are identified as indemnitors, with the requirement that they indemnify Surety.  Nonetheless, appellants, relying on *Great Western*, *supra*, 90 Cal.App.4th 28, argue that W&G was a primary obligor under that Agreement.  In that case, the owner of an apartment building—a partnership that consisting of 12 individuals—obtained a $1.9 million mortgage.  (*Id.* at p. 30.)  The partnership defaulted, the bank filed a successful judicial foreclosure action, and they obtained a deficiency judgment of over $740,000 (including

---

[13] The California Supreme Court has held that "at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is *reasonably possible* the proffered evidence set out in those statements will be admissible at trial."  (*Sweetwater*, *supra*, 6 Cal.5th at p. 949, italics added.)  This is plainly not an instance in which it would be reasonably possible that Michael Weinstock's lay opinions concerning the meaning of the language in the Indemnity Agreement would be admissible at trial.

attorney fees).  (*Ibid.*)  The bank thereafter assigned the judgment to the partnership and 11 of its partners, who then sought a charging order against the 12th partner (Kong) to collect amounts paid under the assigned deficiency judgment.  (*Id.* at p. 31.)  The trial court granted the charging order.  (*Ibid.*)

The appellate court reversed.  It observed that the original partnership obligation from which the deficiency derived was also the joint and several obligation of the partners.  (*Great Western*, *supra*, 90 Cal.App.4th at p. 31.)  As such, upon the partnership's default, the bank sued and obtained a deficiency judgment against the partnership, "the individual partners, 'and each of them.'  In other words, [the partnership] and its partners were liable to [the bank] as co-obligors."  (*Ibid.*)  For this reason, the *Great Western* court held that the partnership and the 11 partners could not enforce the assigned deficiency judgment against Kong, holding "[i]t has long been established in California that the assignment of a joint and several debt to one of the co-obligors extinguishes that debt.  [Citations.]  The assignment amounts to payment and consequently the evidence of that debt, i.e., the note or judgment, becomes *functus officio* (of no further effect).  [Citations.]  Therefore, no action can be maintained on the original debt.  [Citation.]"  (*Id.* at p. 32.)

As a caveat of significance here, however, the *Great Western* court held:  "This rule applies where the co-obligors share primary liability.  If, however, a surety or guarantor, whose liability is secondary, pays the debt, that obligation is not automatically extinguished.  [Citation.]  Rather, the surety or guarantor can maintain an action on the original obligation against the party primarily liable for its payment.  [Citations.]"  (*Great Western*, *supra*, 90 Cal.App.4th at pp. 32-33; see also *Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 505.)[14]

---

[14] Although not addressed by the parties, it appears that Washington law is in accord.  (See *Warren v. Nat'l. Sur. Co.* (1928) 149 Wash. 378, 385 [guarantor who pays (continued)

The record, namely, the Indemnity Agreement,[15] does not show that W&S was a "co-obligor[ that] share[d] primary liability" with the principal, SV 261, LLC. (*Great Western*, *supra*, 90 Cal.App.4th at p. 32.) Rather, W&S was among a number of other indemnitors who agreed to indemnify Surety for losses or expenses associated with, inter alia, actions taken under any bond it issued on behalf of Developer, the principal, and "[l]iability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's nonperformance . . . ." *Great Western* does not support appellants' position that the obligation under the Washington Judgment/judgment entered in the sister state action was extinguished.

For all of the foregoing reasons, appellants did not meet their burden in opposing the anti-SLAPP motion of "demonstrate[ing] a probability of prevailing on the[ir] claim[s]." (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.)

### E. Other Challenges to Anti-SLAPP Ruling

#### 1. *Denial of Supplemental Request for Judicial Notice*

On August 25, 2022, after respondents' filing of their reply papers, appellants filed a supplemental request for judicial notice. The documents that were the subject of the notice were (1) an unsigned March 10, 2015 bankruptcy filing (amended statement of financial affairs) by Daniel and Amber Shaw, in which they, as debtors, identified W&S and LG Escrow, inc. as businesses in which they held a management position or

---

off underlying loan obligation is entitled to an assignment of all rights and interests as against principal obligor, the borrower]; *Pioneer Mining & Ditch Co. v. Davidson* (1920) 111 Wash. 262, 267-268 [guarantor's payment of underlying obligation gives rise to a right of contribution by other guarantors, and "[t]he fact that the guarantor who paid the debt took an assignment of it from the creditor . . . in no manner affected the liability of the debtor"].)

[15] For the reasons discussed, *ante*, we disregard the inadmissible statements in the Michael Weinstock declaration that W&S was a principal obligor.

more than a five percent interest; and (2) a condensed transcript of the deposition of Gerald Shaw, taken on January 20, 2011 in a Washington state court action that appears to have been unrelated to the underlying dispute, in which Gerald Shaw testified, inter alia, that his son, Daniel, owned W&S, and Gerald, as of January 2011, had no ownership interest in the business.  The trial court denied the supplemental request for judicial notice on the grounds that the request was not timely and the documents were, in any event, inadmissible.  Appellants assert that this was error.

"We apply the abuse of discretion standard of review to any ruling by the trial court on admissibility of evidence, including requests for judicial notice.  [Citation.] A trial court's decision 'not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the [trial court] that was so persuasive that no reasonable judge would have refused to take judicial notice of the matter.  [Citation.]'  [Citation.]"  (*Center for Biological Diversity v. Department of Conservation, etc.* (2019) 36 Cal.App.5th 210, 227.)

The supplemental judicial notice request was untimely, it having been filed on August 25, 2022, just three court days . . . before the August 30 hearing.  (See § 1005, subd. (b) [opposition papers must be filed "at least nine court days before the hearing"].) "[A] trial court has broad discretion to accept or reject late-filed papers."  (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 262 (*Rancho Mirage*); see Cal. Rules of Court, rule 3.1300(d) [trial court discretion to refuse to consider late-filed papers].)  Appellants' counsel made no showing of good cause for the late-filing of papers seeking judicial notice of documents that were seven and eleven years old, respectively.  The trial court did not abuse its broad discretion by denying as untimely the supplemental judicial notice request.  (*Rancho Mirage*, *supra*, at p. 262.)

### 2. *Denial of Request for Discovery*

Appellants' counsel at the hearing made a request that she be permitted to conduct discovery on two points:  (1) to show that statements made in Gerald Shaw's 2011

deposition were "true and are applicable"; and (2) to determine the ownership of W&S and Sunnycove. The trial court denied the request to conduct discovery. Appellants challenge the trial court's ruling.

After a special motion to strike is filed, "[a]ll discovery proceedings in the action shall be stayed . . . until notice of entry of the order ruling on the motion." (§ 425.16, subd. (g).) However, "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted . . . ." (*Ibid.*)

Here, appellants' counsel did not make a "noticed motion" seeking a lifting of the statutory discovery stay to permit appellants to conduct limited discovery. Such a noticed motion is a requirement of the statute. (See § 425.16, subd. (g).) As a panel of this court explained: "We do not contest that, by virtue of the statute, the court had the discretionary power to allow discovery despite the stay 'on noticed motion and for good cause shown.' (§ 425.16, subd. (g).) But in the absence of such a noticed motion, the anti-SLAPP statute prescribed the court's power to allow or proceed with discovery proceedings, and the court lacked inherent power to act directly contrary to the statutory mandate. 'Courts, of course, . . . have " 'inherent supervisory and administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority.' [Citation.]" [Citation.] [But these] inherent powers may be exercised only if the procedure or practice of the court is not in conflict with a specified statutory procedure. [Citation.]' [Citation.]" (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1129.)

The trial court did not err in denying appellants' oral motion, not authorized by the anti-SLAPP statute, to lift the statutory stay on discovery and to allow them to conduct limited discovery prior to ruling on the special motion to strike.

### 3.        *Denial of Oral Motion to Amend*

At the hearing, appellants' counsel made an oral request to amend the complaint. She also made a request to continue the hearing in conjunction with the request to amend. The trial court denied the motion to amend.  Appellants assert that this was error.

Aside from appellants stating that the denial of the request to amend by the trial court was "error," and they "should be allowed to amend," they presented nothing in their opening brief concerning the claim that the trial court erred in denying the oral motion to amend.  In their reply brief, appellants added simply that "the court should have allowed amendment of the declaratory relief cause of action at a minimum." (See *People v. Peevy* (1998) 17 Cal.4th 1184, 1206 ["[n]ormally, a contention may not be raised for the first time in a reply brief"].)  We deem appellants' conclusory, undeveloped argument that the trial court erred in denying the request to amend abandoned.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) [conclusory, undeveloped appellate argument deemed abandoned].)

### 4.        *Award of Attorney Fees*

Appellants contend that because the trial court erred in granting the anti-SLAPP motion, this court should reverse the court's subsequent order awarding respondents attorney fees and costs.

There is no order granting fees and costs before this court.[16]  As noted, the trial court denied without prejudice respondents' motion for attorney fees and costs in the order granting respondents' special motion to strike the complaint.  Any order awarding attorney fees under the anti-SLAPP statute that was made after the court granted the motion to strike would be a separately appealable order.  (See *Ellis Law Group, LLP v.*

---

[16] We note from the trial court's register of actions that is part of the appellate record that, subsequent to the filing of the order granting the special motion to strike on September 1, 2022, respondents filed a motion for attorney fees and costs that appears to have been heard by the court on December 15, 2022.

*Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251.) If there were a subsequent order granting attorney fees and costs following dismissal of the action, it would be subject to a separate appeal that is not presently before us.[17]

---

[17] In their reply brief, appellants raise for the first time arguments (1) challenging the validity and scope of the assignments of the Washington Judgment, first from Surety to W&S, and later from W&S to Sunnycove; and (2) asserting that respondents have no standing to pursue collection of the Washington Judgment in the sister state proceeding. Neither of these arguments was asserted by appellants below. It is an " 'established rule[] . . . that issues not raised in the trial court cannot be raised for the first time on appeal. [Citations.]' " (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; see also *Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1526 (*Hunter*) [principle that parties are barred from raising arguments on appeal that were not presented below applies to anti-SLAPP motions].) Appellants have waived these new arguments, and they are barred from asserting them here. (*Hunter*, *supra*, at p. 1526.) It was further inappropriate for appellants to defer making the new arguments until submitting their reply brief. (See *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214 [appellate court "need not consider new issues raised for the first time in a reply brief in the absence of good cause"]; see also *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776 [failure to assert argument at trial level or in opening brief " 'doubly waived' " it].)

Appellants also argue that alleged misstatements and omissions by Daniel and Amber Shaw in their 2015 bankruptcy filings warrant the application of judicial estoppel as grounds for concluding that respondents may not take action to collect on the Washington Judgment. Although judicial estoppel was briefly and conclusorily raised in appellants' written opposition filed below, it was not mentioned at the hearing; the focal point of the argument of appellants' counsel was that the obligation upon which the Washington Judgment was based was extinguished. Even assuming that the litigation privilege is not a complete defense to each of appellants' claims, this court does not find that appellants have shown that these alleged misstatements and omissions in bankruptcy filings would warrant barring respondents' enforcement of the Washington Judgment. Appellants have thus not shown a probability that they would prevail on their claim through the application of judicial estoppel.

36

### F. Challenge to Denial of Preliminary Injunction Is Not Cognizable

Appellants argue in their opening brief that the trial court erred in denying their motion for preliminary injunction. This purported appellate claim is not properly before this court.[18]

We recite briefly the relevant procedural background. After the parties' submitted papers in support of and in opposition to appellants' motion for preliminary injunction, the trial court, by unsigned minute order, denied the motion after hearing on July 14, 2022. Although not part of the original appellate record,[19] a formal order denying the motion for preliminary injunction signed by the court was filed on July 27, 2022. The record does not disclose that appellants filed a notice of appeal from the order denying preliminary injunction *at any time*.[20] After the trial court granted respondents' anti-SLAPP motion on September 1, 2022, appellants *did file* a notice of appeal on October 4, 2022 *from that particular order*. That notice of appeal specified that the appeal was being taken solely from the court's "Order granting a motion to strike pursuant to CCP § 425.16." (See § 425.16, subd. (i) [order granting or denying anti-SLAPP motion is separately appealable under § 904.1].) The notice of appeal specifically referred to the judgment or order entered on "September 6, 2022 (Notice of Entry)," and it included as an attachment a notice of entry served by respondents' counsel and filed September 6,

---

[18] Appellants' argument in their opening brief in support of reversal of the order denying preliminary injunction is wholly conclusory and undeveloped. Were the appellate claim cognizable, which it is not, we would treat the undeveloped claim as having been abandoned. (See *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

[19] On this court's own motion, we augmented the record to include the formal order denying appellants' motion for preliminary injunction.

[20] It does not appear that a notice of entry of the order denying preliminary injunction was filed by the clerk or any party, and therefore, the 60-day deadline for filing a notice of appeal was not triggered. (See Cal. Rules of Court, rule 8.104(a)(1)(A),(B).) But even if, in this instance, a notice of appeal was required to have been filed within 180 days of the appealable order (see Cal. Rules of Court, rule 8.104(a)(1)(C)), no notice of appeal was filed by January 23, 2023.

2022, that in turn attached the order granting the special motion to strike.  There is no mention in the notice of appeal of the order denying preliminary injunction.

An order denying preliminary injunction is a separately appealable interlocutory order.  (See § 904.1, subd. (a)(6); see also *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1019, fn. 4.)  An aggrieved party must file a timely appeal from an appealable order in order to preserve review.  (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.)  Thus, the rule for separately appealable orders is that " ' "[w]here several judgments and/or orders occurring close in time are separately appealable . . . , each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' [Citations.]"  (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 (*Sole Energy*); see *id.* at pp. 239-240 [challenge to separately appealable order granting new trial not cognizable, where notice of appeal referred only to appeal from judgment]; see also Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2023) ¶ 3.119.1.)  For example, where the plaintiffs filed a notice of appeal from a judgment entered against them on a cross-complaint, but they did not file an appeal from the separate judgment entered on the complaint, the appellate court held that they were precluded from challenging on appeal issues related to the adverse judgment on the complaint.  (See *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173-174.)

Here, the only notice of appeal filed by appellants referred only to the separately appealable order granting respondents' special motion to strike; the notice contained no reference to the order denying preliminary injunction.  This jurisdictional defect cannot be overlooked.  (See *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1315-1316, 1317.)  Nor can we apply the rule that notices of appeal are to be construed liberally (see Cal. Rules of Court, rule 8.100(a)(2)).  " 'The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part

of the judgment or one of two separate appealable judgments or orders. [Citation.] " ' "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment [or order] being appealed." ' [Citation.]" (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1172.) Therefore, because the notice of appeal filed in this case makes no reference to the injunction order, and appellants failed to appeal from this separately appealable order, this court is without jurisdiction to consider appellants' challenge to this order. (See § 906 ["provisions of [the statute] do not authorize the reviewing court to review any decision or order from which an appeal might have been taken"]; see also *Sole Energy*, *supra*, 128 Cal.App.4th at p. 240.)

### III.   DISPOSITION

The September 1, 2022 order granting respondents' special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16 is affirmed. Respondents shall recover their costs on appeal.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.



WE CONCUR:




_____
DANNER, J.




_____
BROMBERG, J.




*Weinstock Family Trust et al. v. Shaw et al.*
**H050438**